# E. A. W. CANNON v. STATE.

No. A-9131.   Nov. 13, 1936.
(62 Pac. [2d] 657.)

Meacham, Meacham & Meacham, for plaintiff in error.

Mac Q. Williamson, Atty. Gen. (Sam H. Lattimore, Asst. Atty. Gen., and Lowell R. Smith, Co. Atty., of counsel), for the State.

UPDEGRAFF, Special J.   The information, in substance, charged that in the said county, on or about the 26th day of April, 1935, E. A. W. Cannon, the defendant, did willfully, unlawfully, and feloniously and with malice

aforethought and with premeditated design to kill and murder one J. L. Whitlock by inflicting certain mortal wounds with a .32-caliber pistol with the felonious intent on the part of him, the said E. A. W. Cannon, to kill and murder the said J. L. Whitlock.

From the judgment rendered November 9, 1935, he appeals.

The only errors assigned are that the court erred in allowing the state to introduce the bloody clothing of the deceased and in overruling defendant's objection thereto, and that the fifteen-year sentence imposed by the trial court is excessive.

A substantial statement of the evidence is as follows:

Herman Swartz testified that he lived two miles south and a half east of Rocky, and was acquainted with E. A. W. Cannon, the defendant, and had known him about 23 years; that he knew J. L. Whitlock, the deceased, and had known him about the same length of time; that the defendant came to his house about 1 o'clock p. m. on the afternoon of April 26, 1935; that the defendant came to talk to him about the Cannon estate; that he (Swartz) was the administrator of the estate of Sarah C. Cannon, deceased; that some property of the estate was to sell on the following Monday; that the property under discussion was to be sold. At 1:15 p. m. the deceased drove up in a car with Tom Cannon and called him, Swartz, out to the car to engage him in conversation; that the deceased was driving the car and was sitting on the left side under the steering wheel, and T. J. Cannon was seated beside him in the front seat, and that he, Swartz, got in the back seat; that no conversation was had at that time between the deceased and the defendant. The defendant

remained on the premises about ten or fifteen minutes and got in his car and drove off. The deceased, J. L. Whitlock, and Tom Cannon and Swartz talked about twenty minutes. The defendant returned, stopped his car about fifteen feet from J. L. Whitlock's car, and the defendant got out of his car and came to the car in which the deceased was sitting. The defendant opened the car door with his left hand, pulled a pistol out of his right hip pocket, and shot the deceased twice as the deceased sat in the car with his hands resting on the steering wheel. After shooting the deceased twice, he shot his brother, Tom Cannon, once while he was attempting to get out of the car, and once as he was fleeing from the car toward the kitchen door. The defendant fired another shot at him, missing him. The deceased died a few minutes later in the bedroom. The defendant said to Swartz, "I am not going to hurt you or your family. I am getting tired of people meddling in my business." The witness had, prior to April 26, had a conversation with the defendant concerning the deceased, and the defendant had understood the deceased was going to buy the place. The deceased and the defendant were not good friends. The defendant said that the deceased had lied on the witness stand on the hearing of the probating of the estate. The defendant had made this statement to him several times.

T. J. Cannon testified that he was a brother of the defendant; that he went with the deceased to the probate judge's office in Cordell, and from there to Hobart to Mr. Carder's office to see about the estate of Sarah C. Cannon; that he left Mr. Carder's office and went to Mr. Swartz' and stopped there to talk to him, and that he saw the defendant there. Mr. Swartz came out to the car and got in, and the defendant left in his car. The defendant returned in a few minutes, got out of his car,

came over to the car in which the men were seated, pulled a gun from either his pants pocket or bosom, and said, "You sons of bitches needn't think you can put anything over me. I'll just kill you." The defendant opened the car door and shot the deceased twice. The deceased was sitting with his hands upon the steering wheel. After the shots were fired at deceased, Cannon jumped out of the car. The defendant shot T. J. Cannon in the jaw bone, and as he ran shot him again between the shoulders in the back. Then the defendant turned and fired again at the deceased as the deceased was going toward the house. The witness was not present when the deceased died.

W. H. Dean testified that he was undersheriff of Washita county; that he had the deceased's clothing in his possession; and that they were in the same condition as when they were removed from the body of the deceased. There were two gunshot wounds upon the body of the deceased, one under the left armpit on the side, and another several inches below on the left side and ranging slightly toward the front.

Hugh Ferguson testified that he was the postmaster in the town of Rocky, and that he examined the gunshot wounds and that there were two wounds, one about in line with the left nipple, and one just below that.

Perry B. Sullens testified that he was deputy sheriff of Washita county, and went to Farwell, Tex., to return the defendant, and that the defendant told him the shooting was over his father and mother's estate.

As a witness in his own behalf, the defendant testified that on the morning of the 26th day of April, 1935, about 9:30 o'clock, he went to Hobart to the office of Mr. Carder, a lawyer, and was there fifteen or twenty minutes; that he left this office, but returned there again

about 11:30 and talked to Mr. Carder. On that occasion while he was in the office the stenographer announced that Mr. Whitlock and Mr. Cannon wanted to see Mr. Carder. The defendant left Carder's office without being seen by the deceased or Tom Cannon, and went out to Mr. Swartz', and was talking to Mr. Swartz when his brother, T. J. Cannon, and the deceased came up. The deceased called Mr. Swartz to the car. The defendant remained on the premises about ten or fifteen minutes after their arrival, when he went to his home. He returned to Mr. Swartz' and did not know that T. J. Cannon and the deceased were still here. Arriving at Mr. Swartz', he got out of his car and said, "How-de-do, Mr. Whitlock," and the deceased answered, "I'll kill you, you God-damn-son-of-a-bitch." Deceased got out of the car and advanced toward defendant. When the deceased got out in front, defendant told him to stop. Defendant's brother was out of the car and went around the corner, and said, "Jesse, kill him; kill him, Jesse." Defendant told the deceased to stop, but Mr. Whitlock ran toward the defendant, and defendant then fired two shots. Defendant testified Whitlock had a knife in his right hand. The trouble arose over a lawsuit begun three years before. Defendant admitted the gun introduced in evidence looked like his gun; and that he had carried the gun ever since the deceased had threatened him over the estate a few years before. After the shooting, he left the state and went to Friona, Tex., to his daughter's.

The defendant had several character witnesses to testify that he was a man of good character.

The foregoing substantially states both the state's and the defendant's theories of the case. The record shows that the deceased, J. L. Whitlock, had been a witness to the will of Sarah C. Cannon, mother of the defendant,

and that in the ensuing litigation over the estate the deceased had been called upon to testify as a witness at various hearings. It further appears that his testimony had aroused bitterness toward the deceased on the part of the defendant, and the defendant had accused the deceased, both to his face and in conversations with others, of having lied on the witness stand. The land on which the defendant was living, which was a portion of the estate, was to be offered by the administrator, Herman Swartz, for sale on Monday following the date of the killing.

1. The admission of the clothing of the deceased in evidence was competent. The bullet holes in the clothing became of importance in refuting or substantiating the self-defense plea of the defendant, and verifying the testimony of the state's witnesses, and was properly admitted.

2. Upon a careful consideration of the record, we are of the opinion that this conviction was justified by the facts and circumstances in evidence, and any other verdict than the one rendered would have been against the weight of the evidence. The jury had the witnesses before them and could see their manner of testifying, and they no doubt in determining the truth took into consideration all the circumstances of the case.

3. It is our conclusion, after a careful examination of the entire record, that the defendant had a fair and impartial trial and that his conviction is sustained by the evidence.

The judgment is therefore affirmed.

DOYLE and DAVENPORT, JJ., concur.