Argued and submitted March 31, affirmed July 8, 1982

EUGENE EDUCATION ASSOCIATION,
*Petitioner,*

*v.*

EUGENE SCHOOL DISTRICT 4J et al,
*Respondents.*

(No. C-141-78, CA A22829)

648 P2d 60

Henry H. Drummonds, Portland, argued the cause for petitioner. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Portland.

Stuart Brown, Eugene, argued the cause for respondent Eugene School District No. 4J. With him on the brief were Nick E. Rauch, and Young, Horn, Cass & Scott, Eugene.

Jan Peter Londahl, Assistant Attorney General, Salem, waived appearance for respondent Employment Relations Board.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Eugene Education Association (Association), the exclusive bargaining representative for certificated teachers employed by Eugene School District No. 4J (district), appeals from the Employment Relations Board's (ERB) dismissal of the Association's complaint that the district committed an unfair labor practice by refusing to comply with an arbitration award.[1] ORS 243.672(1)(g). We affirm.

In 1977, two teachers employed by the district applied for coaching positions. In what was apparently a departure from its usual practice, the district hired persons who were not members of the bargaining unit to fill the positions. The Association contends that the district violated the parties' collective bargaining agreement by hiring coaches from outside the bargaining unit without first negotiating in good faith about whether to deviate from the existing practice.

Article 5 of the agreement provides that members performing extra duty services, such as coaching, are to receive compensation in addition to their regular pay as teachers. Article 2.8 provides:

> "No employee, as a result of this agreement, shall suffer any loss of compensation or established conditions of employment with respect to mandatory subjects of bargaining which have been enjoyed by a majority of employees in similar job assignments."

Article 2.1 provides, as relevant:

> "* * * The provisions of this agreement shall be incorporated into and become a part of the established policies, rules, regulations, practices, and procedures of the district. All existing personnel policies dealing with mandatory subjects of bargaining, not modified or inconsistent with this agreement are hereby incorporated and made a part of this agreement. * * *"

---

[1] In *Eugene Ed. Assoc. v. Eugene Sch. Dist. 4J,* 50 Or App 191, 623 P2d 65 *rev den* 291 Or 9 (1981), we remanded an earlier order in which ERB ruled th the district was not guilty of an unfair labor practice in connection with th complaint.

The agreement establishes a grievance process. Article 3.3.6.1 provides that, if earlier procedures have not resolved a grievance,

> "* * * [a] dispute qualifies for arbitration if it is a contract grievance. A contract grievance is one which pertains to any dispute about the interpretation or application of the collective bargaining agreement between the parties. * * *"

The Association filed a grievance about the district's hiring action and, after the parties had failed to achieve a resolution through the earlier stages, the grievance was submitted to arbitration. According to ERB's order:

> "* * * The arbitrator framed the issues for arbitral inquiry as:

> "(1) Whether the District refused to bargain in good faith with the Association within the meaning of ORS 243.672(1)(e) by hiring nonbargaining unit individuals for the [coaching] positions * * *; and if so, did [the teacher applicants] suffer any loss of compensation or established conditions of employment with respect to mandatory subjects of bargaining which have been enjoyed by a majority of employees in similar job assignments;

> "(2) Whether the District violated the terms of the collective bargaining agreement, particularly Sections 2.1, 2.8, 5.1, 12.7.1 and Article 15, by hiring nonbargaining unit individuals for these positions when qualified applicants within the District were available; and

> "(3) What is the appropriate remedy in the event it was found that issues one and/or two above were answered in the affirmative.

> "In response to the first issue, the arbitrator found that:

> " '[T]he contracting out of extra duty assignments of the type sought by [the teachers] were mandatory subjects of bargaining, and the employer should have bargained with the union before unilaterally changing the basic ground rules followed with respect to hiring.'

> "The arbitrator then went on to note that Article 2.8 of the contract provides for maintenance of standards and concluded that:

> " 'Since the subject matter of this grievance is a mandatory subject of bargaining and is also an established

condition of employment under §2.8 of the agreement, this dispute qualifies as an appropriate subject for arbitration.' (Footnote omitted.)

"As a mandatory subject of bargaining, the arbitrator found that the District's change in policy '. . . should have been discussed with the union before it was implemented.' Thus, the arbitrator concluded that the District violated ORS 243.672(1)(e) by its refusal to bargain in good faith over its decision to hire nonbargaining unit individuals for the subject coaching positions.

"In response to the second issue, which dealt with the merits of the grievance and the primary focus of the dispute and arbitration proceeding, the arbitrator summarily ruled that the District had not violated any of the terms of the bargaining agreement by '. . . contracting out the [coaching] positions * * * to those outside the bargaining unit.' In support of his ruling, the arbitrator relied on this Board's holding in *Eugene Education Association v. Eugene School District No. 4J,* Case No. C-104-76, 2 PECBR 1101, 1106, (1977), as well as case precedent from the private sector."[2]

The arbitrator then awarded the two employees the extra compensation "they would have received if they had been hired for the coaching positions," commencing on the day the persons from outside the bargaining unit were hired and continuing

"* * * until such date as the District and the Association have made reasonable efforts to bargain in good faith with respect to the issue of the appropriateness of hiring non-district personnel to fill such positions."

Stated summarily, the agreement provides for arbitration of grievances relating to "the interpretation or application of the collective bargaining agreement"; the arbitrator found that the district's actions did not violate the *agreement,* but that the district's failure to bargain in good faith about a mandatorily bargainable subject affecting an established employment condition was a *statutory*

---

[2] These findings were adopted from ERB's earlier order in the case, *see n* *supra,* and are not challenged here.

[3] That section provides:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

unfair labor practice under ORS 243.672(1)(e).[3] ERB concluded:

> "The arbitrator clearly found no violation of the collective bargaining agreement even though he did find that the District committed an unfair labor practice under ORS 243.672(1)(e). The arbitrator's jurisdiction was limited to the contract by the document itself. We can say, then, with positive assurance that the arbitrator exceeded his jurisdiction and authority in this case.
>
> "We reach this result even though we believe the arbitrator could have grounded his award on a violation of Section 2.8 of the 1976-79 collective bargaining agreement.[1] We will not refuse to enforce an award that is within an arbitrator's authority simply because we believe the award is wrong. Likewise, we will not enforce an award that is outside an arbitrator's authority simply because we believe the award is, under all the facts of the case, right.

---

> "1. The arbitrator apparently felt he was bound by this Board's decision in 2 PECBR 1101, *supra*, and, therefore, did not find a violation of the maintenance of standards section of the contract. This was unfortunate. First, he was not bound by that decision because it was his interpretation of the contract the parties had bargained for, not an interpretation by this Board. Second, upon review, it seems clear to this Board that its decision in 2 PECBR 1101 was inconsistent and, as to Conclusion of Law No. 2, was wrong."

On appeal, the Association argues that the arbitrator's award is enforceable, because the statutory requirement that the parties bargain in good faith about mandatorily bargainable subjects of the kind in question was incorporated into the agreement through Articles 2.1 and 2.8, and the district's failure to bargain with the Association before hiring coaches from outside the bargaining unit therefore violated the agreement, although the hiring decisions themselves did not. The Association concludes:

---

> "* * * * *
>
> "(e) Refuse to bargain collectively in good faith with the exclusive representative.
>
> "* * * * *"

nothing in this opinion should be understood to indicate *our* view about whether Association's grievance involves a mandatory subject of bargaining under the statute, or about whether the district's failure to bargain violated the statute. *See Eugene Ed. Assn. v. Eugene Sch. Dist. 4J*, 58 Or App 32, 648 P2d 56 (1982).

> "* * * Since the contract provision incorporated a statutory protection, in this case the statutory and contract violations are the same. The award thus derived its essence from the contract. * * *
>
> "* * * * *
>
> "* * * In the absence of agreement, an arbitrator generally has no power to decide an unfair labor practice. But here the contract incorporates a statutory ban on unilateral changes without bargaining in mandatory areas. The ERB puts 'form over substance' to hold that the arbitration award becomes fatally defective merely because the arbitrator phrases his decision in terms of the statutory protection rather than the contract provision (which incorporates the statutory provision)."

The Association also argues that,

> "* * * even if the arbitrator *stated* an incorrect statutory ground for his decision, the award should be sustained if the award, as conceded by ERB, was 'right,' and a ground for sustaining the grievance did exist *in the contract.* This is such a case. Appellate courts sustain trial judges in many situations where the trial judge has reached a correct result on a ruling, but stated an arguably incorrect ground. Similarly, labor arbitration awards should be upheld where the ruling *in fact* was within the authority of the arbitrator, though not for the reason cited by the arbitrator. * * *" (Emphasis the Association's.)

Alternatively, if the award is not enforceable as written, th Association argues that the arbitrator's decision is ambigu ous and internally inconsistent and should be remanded t him for clarification.

The threshhold problem with the Association contention that the award is enforceable is that th arbitrator *expressly* concluded that the agreement had n been violated. The Association and, apparently, ERB co sider that that conclusion was based on an erroneo interpretation of the agreement. Even if we assume that t arbitrator's conclusion was legally incorrect, however, t question is what if anything ERB could or we can do abo it.

■ We do not accept the Association's contention th the award is enforceable because the arbitrator was rig for the wrong reasons. The arbitrator's only source

authority was the provision in the agreement for arbitration of disputes involving the interpretation or application of the agreement. The Association's contention might have merit if the arbitrator had made an award on the erroneous premise that the district had violated one section of the agreement when it had in fact violated another. However, the arbitrator's conclusion that there had been *no* violation of the agreement divested him of authority to make any award. Accordingly, for the Association to prevail on the issue of enforceability, we would have to reach the merits of and, in effect, reverse the arbitrator's conclusion that the agreement was not violated and, therefore, would have to hold that the arbitrator had jurisdiction to make an award. We decline to do so.

Review by courts of the legal merits of commercial arbitration decisions under ORS 33.210 *et seq.* is extremely limited. *See* ORS 33.320. In *Brewer v. Allstate Insurance Co.*, 248 Or 558, 436 P2d 547 (1968), the Supreme Court addressed the scope of its review of the merits of a decision rendered pursuant to the arbitration provision of an insurance contract:

> "* * * ORS 33.280(4) vests in arbitrators the power to '[d]ecide both the law and the facts involved in the cause submitted to them.' The arbitrator acts within the bounds of his authority not only when he decides a question of law correctly according to judicial standards, but also when he applies the law in a manner which a court would regard as erroneous. As we said in *Mahaffy v. Gray,* 242 Or 522, 525, 410 P2d 822, 823 (1966), 'Neither a mistake of fact or law vitiates an award.'

> "* * * [E]rrors of this kind are a part of the cost of employing the arbitration method of decision-making. The principal purpose of arbitration is to avoid litigation. If the arbitrator's award is subject to extensive judicial control, this purpose is largely frustrated. Although there is some disagreement among the courts and legal scholars on the question of the extent to which arbitration awards should be subjected to judicial control, we favor the view that confines judicial review to the strictest possible limits." (Footnotes omitted.) 248 Or at 561-62.

The court indicated that judicial intervention is warranted only when the ruling of the arbitrator is "so grossly erroneous as to strike at the heart of the decision-making

process." 248 Or at 563. The court in *Brewer* therefore refused to reverse the arbitrator's ruling which misallocated the burden of proof.

The scope of review of arbitration decisions under the Public Employe Collective Bargaining Act (ORS 243.650 to 243.782) has not been as clearly defined. In *AFSCME v. Executive Dept.,* 52 Or App 457, 628 P2d 1228, *rev den* 291 Or 771 (1981), we suggested that the courts should defer to arbitrators' decisions to the same extent that they do in the commercial arbitration context. We stated:

> "We do not reach the state's argument challenging the amount of the salary increases [awarded by the arbitrator]. Where the parties, by law or by contract, have to submit their differences to arbitration, it is not the role of a reviewing court or ERB to substitute its judgment for that of the arbitrator on the merits of the award. * * *" 52 Or App at 467.

We also noted:

> "Under federal labor law, refusals to comply with arbitration awards are actionable in U. S. district courts as breach of contract claims. The U. S. Supreme Court has held that, in such an action, judicial review of an arbitrator's award is confined to a determination of whether or not the claim is arbitrable and courts may not reach the merits of the award. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 US 493, 80 S Ct 1358, 4 L Ed 2d 1424 (1960); *United Steelworkers v. American Mfg. Co.,* 363 US 564, 80 S Ct 1343, [80 S Ct 1363], 4 L Ed 2d 1403, [4 L Ed 2d 1432] (1960). Since Oregon's Public Employment Relations Act is modeled in many respects after the National Labor Relations Act, we have said before that federal decisions interpreting the NLRA will be given some weight in interpreting the Oregon statute. *Klamath County v. Laborers Inter. Union,* 21 Or App 281, 534 P2d 1169 (1974); *see* Comment, *Applying Private Sector Law to the Public Sector Strike in Oregon,* 56 Or L Rev 251, 253-54 (1977). Since, however, ERB, unlike the National Labor Relations Board, has the authority to hear claims of statutory violations and breach of contract claims as unfair labor practice complaints, ORS 243.672(1)(g), (2)(d); Brodie, *Public Sector Collective Bargaining in Oregon,* 54 Or L Rev 337, 339 (1975), the court's role in our arbitration

scheme should, presumably, be even more limited." 52 Or App at 464, n 10.

However, our language in *AFSCME* is not dispositive here. Stated most specifically, the question in this case is whether we should pass on the merits of an arbitrator's interpretation of an agreement rendered pursuant to a provision of the agreement that makes disputes about the agreement arbitrable. In *AFSCME*, arbitration was conducted pursuant to statutory procedures applicable when strikes are prohibited, ORS 243.742 *et seq.*, and not pursuant to a contractual arbitration provision. *See* ORS 243.706. Our decisions relating to review of arbitrators' decisions where arbitration is contractually authorized have not been as clear-cut as the language in *AFSCME*.

In *Willamina Ed. Assoc. v. Willamina Sch. Dist. 30J*, 50 Or App 195, 623 P2d 658 (1981), we quoted the test we had earlier approved in *Siegel v. Gresham Grade Teachers Assn.*, 32 Or App 541, 574 P2d 692 (1978):

" 'The test for determining whether an arbitration decision should be followed, as formulated by the National Labor Relations Board and adopted by ERB, has three parts. An arbitration decision will be honored if (1) the arbitration proceedings were fair and regular; (2) the parties had agreed to be bound thereby; and (3) the arbitrator's decision was not repugnant to the act. *See, International Harvester, Inc.,* 138 NLRB 923 (1962), *enf'd sub nom Ramsey v. NLRB,* 327 F2d 784 (7th Cir), *cert den* 377 US 1003 (1964); *Spielberg Manufacturing Co.,* 112 NLRB 1080 (1955).' 32 Or App at 546." 50 Or App at 200.

We then stated in *Willamina Ed. Assoc.:*

"The third part of the test was framed in terms of the award's compatability with the basic policies of the collective bargaining statute. We agreed with ERB's reasoning in *Siegel* that the arbitration award in that case was not repugnant to PERA:

" '* * * In determining whether to honor a prior arbitration award, this Board does not approve or disapprove of the reasoning used by the arbitrator in support of his award. We merely determine whether the award is "palpably wrong" when analyzed under the [PERA].' 32 Or App at 548.

"In this case, ERB purported to review the award under the *Spielberg-Siegel* test; however, it did not review the

award solely for its repugnancy to PERA. ERB stated: '[U]nder this test, this Board reviews the merits of an arbitration award to the extent of determining whether the award is palpably wrong.'

"In *Willamina Education Association 30J and Barbara Crowell Lucanio v. Willamina School District 30J,* Case no. 30J 30-44-63J, (-253-79, 5 PECBR 4086 (1980), ERB recognized that the scope of review it had employed in this case had in fact modified the *Spielberg-Siegel* test:
"* * * * *.

"We conclude that by reviewing the merits of the arbitration award, ERB employed a scope of review contrary to the policy of PERA, which favors binding arbitration as a means of dispute resolution. * * *" 50 Or App at 200-02.

■ *Willamina Ed. Assoc.* and *Siegel* appear to hold that ERB's substantive review of the merits of arbitration awards is appropriately limited to the inquiry whether "the arbitrator's decision [is] repugnant to the act." The "repugnancy" test of those cases can be viewed as an analog of the review standard articulated in *Brewer* for appeals in commercial arbitration cases, *i.e.,* whether the arbitrator's ruling is "so grossly erroneous as to strike at the heart of the decision-making process." For purposes of the narrow issue in this case—whether the arbitrator's putatively erroneous interpretation of the agreement should be reexamined on review—we hold that the "repugnancy" test we have approved in the public sector collective bargaining context and the "grossly erroneous" test enunciated in *Brewer* are equivalent. We also hold that, here, the arbitrator's failure to conclude that the district violated the agreement by violating the statutory requirements incorporated into the agreement was not sufficiently egregious to be reversible under those tests. It follows that ERB was correct in ruling that the arbitrator exceeded his authority by making an award notwithstanding his finding that there was no contract violation on which the award could be based.[4]

---

[4] The district contends that the arbitrator *could* not be given authority by the agreement or otherwise to decide whether an unfair labor practice under ORS 243.672(1)(e) had occurred. According to the district, that question can be decided only by ERB and is not an arbitrable matter. It is unclear to us whether the district's argument extends to the arbitrability of a contract provision which incorporates the statutory requirement. In any event, our disposition of the enforceability issue makes it unnecessary for us to address the district's contention.

■          We stated in *Siegel v. Gresham Grade Teachers Assn., supra:*

"ERB thus concluded that its substantive review of arbitration decisions should be circumscribed in much the same way as is our review of agency decisions under *McCann v. OLCC*, [27 Or App 487, 556 P2d 973 (1976), *rev den* 277 Or 99 (1977)]. If the arbitrator's reasoning is not fallacious, and tends to advance the purposes of the PERA, ERB will give effect to it rather than undertaking its own independent analysis of the law and facts. This limited review by ERB does not restrict this court's scope of review; nor does it insulate the arbitrator's decision from judicial scrutiny in a subsequent related proceeding. If the court concludes that an arbitration award is predicated upon fallacious reasoning or upon a clearly erroneous analysis of the PERA, then ERB's order applying the arbitrator's decision in a subsequent proceeding must necessarily be equally deficient. Thus, by reviewing ERB's conclusion that the arbitrator's decision was not repugnant to the PERA, this court also, at least implicitly, reviews that arbitrator's decision itself." 32 Or App at 548-49.

That language *could* be read to suggest that the narrow test of reviewability we approved in *Siegel* was intended only as a limitation on ERB's review of the substantive merits of arbitrators' decisions and was not intended to limit our own review. However, we do not read the quoted language from *Siegel* in that way. The appropriate scope of our review of arbitration decisions, as distinguished from that of ERB, was not the issue in *Siegel*. As we understand the quoted language, it means simply that, in considering an appeal from an ERB decision concerning the enforceability of an arbitration award, this court is not bound by ERB's conclusion of law that the award is or is not repugnant to the Act, and we must look to the award itself to make our own determination. We now hold that, at least where an arbitrator's legal conclusion pertains to the interpretation or application of a collective bargaining agreement and where that agreement is the source of the arbitrator's authority, the same restrictive test for review of that conclusion should apply at both the agency level and in this court.[5]

---

[5] For purposes of this case, we adhere to the *Siegel* "repugnancy to the Act" t.

■ The Association contends, as an alternative to its enforceability argument, that ERB erred by not remanding the arbitrator's decision for clarification, because "there was a fundamental ambiguity and inconsistency in the arbitrator's award." The Association explains:

"The ERB's ruling that the arbitrator lacked authority to render his award is apparently based on the arbitrator's statement at page 31 of his award that none of certain contract articles — including those incorporating district policies in 'mandatory' areas — was violated. The ERB focuses on one sentence of a 40-page award, which mistakenly lists Articles 2.1 and 2.8 as included in the articles *not* violated. The ERB refuses to look at the preceeding 31 pages of the award deciding the 'primary' issues of a unilateral change in a 'mandatory subject of bargaining' in the association's favor. Nor does ERB recognize an inconsistency and ambiguity in the fact that the arbitrator sustained the grievance and ordered a remedy. Nor does ERB even acknowledge that the parties' contract incorporates a statutory issue by limiting changes in 'mandatory subjects of bargaining'. How *could* the arbitrator rationally find a change in a mandatory subject and sustain the grievance and grant a remedy, on the one hand, while still finding no violation of Article 2.1 on the other?

"The Court of Appeals, ERB and the school district have all acknowledged that the arbitrator's award appeared inconsistent, ambiguous, or 'confused'. * * *" (Emphasis the Association's.)[6]

We find nothing for the arbitrator to clarify or remand. His decision may be self-contradictory, confusing or wrong, but it is not ambiguous. He clearly ruled that there was no contract violation, and he therefore acted beyond his authority in ordering a remedy. Assuming *arguendo,* that ERB had authority to remand to the

---

[6] We stated in *Eugene Ed. Assoc. v. Eugene Sch. Dist. 4J,* 50 Or App 191, 62 P2d 657, *rev den* 291 Or 9 (1981):

"We note that the arbitrator's opinion and award seems to be internal inconsistent, apparently because the arbitrator relied on a previous ERB ca involving the same parties, *Eugene Education Association v. Eugene Sch District, No. 4J,* ERB C-104-76, 2 PECBR 1101 (1977). * * * The arbitrator the instant case felt compelled to follow that ruling, even though it appe inconsistent on its face. As a result the same *apparent* inconsistency made way into the opinion and award. We express no opinion on the merits of arbitrator's opinion and award or on the validity of the Board's 1977 decision (Emphasis in original.) 50 Or App at 193-94.

arbitrator in this proceeding under ORS 243.672(1)(g), ERB did not err by declining to do so, when the only thing the arbitrator could do on remand was to reconsider the issue that he had previously decided.

The Association argues that, if there is no remand to the arbitrator:

"*[T]he Employment Relations Board's Dismissal of the Complaint Leaves the Grievants Without any Remedy Though the Only Person to Rule on the 'Primary' Permissive-Mandatory Issue Ruled in their Favor*

"The error was the arbitrator's, not the grievants' or the association's. The ERB renders a 'final and binding' determination by the arbitrator in favor of the association on the 'primary issue' (as stated by the school district representative) meaningless. It is too late to file another grievance, or even another unfair labor practice charge within the 180-day statute of limitations. Yet, ERB took 17 months to decide the case. Moreover, under ERB's stated rule of *requiring* parties to submit disputes through the contract grievance procedure where available, the grievants face a 'Catch-22' indeed." (Emphasis the Association's; footnote omitted.)[7]

The simple answer is that the Association entered into an agreement under which certain disputes are arbitrable. The Association does not contend that the agreement's arbitration provision is inapplicable to the grievance it filed. The arbitration forum was of the Association's and the district's choosing. Arbitration has certain advantages and disadvantages that are not common to other forums, but like any other forum, arbitration carries with it the inherent risk that the effective final decision-maker will be wrong. For reasons previously stated, we do not find the fact that the arbitrator may have been wrong here to be a basis for reversing his conclusion of law; and we also find that that fact is not a basis for remanding the matter to him to make a second decision which the Association might consider right.

Affirmed.

---

[7] Whether remedial procedures remain available to the Association is not before us.