SIEGEL et al, *Petitioners,*
*v.*
GRESHAM GRADE TEACHERS
ASSOCIATION et al, *Respondents.*
(CA 8911)
574 P2d 692

Richard D. Gatti, Salem, argued the cause for petitioners, With him on the brief was Gatti, Ward & Gatti, Salem.

Edward P. Heid, Eugene, argued the cause for respondent Gresham Grade Teachers Association. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

No appearance for respondent Gresham Grade School District No. 4.

Before Schwab, Chief Judge, and Tanzer and Roberts, Judges.

TANZER, J.

**TANZER, J.**

This is a review of an order of the Employment Relations Board (ERB) dismissing an unfair labor practice complaint against the Gresham Grade Teachers Association (GGTA) and Gresham Grade School District No. 4. The GGTA is the certified bargaining representative of all teachers in the district. Petitioners are nonunion members of the bargaining unit. The substance of their complaint is that, pursuant to its collective bargaining agreement, the district has withheld money from petitioners' salaries which was then given to the union as "fair share" payments.[1] Petitioners contend that this was improper because the fair share agreement was never approved by a majority of the bargaining unit, as required by ORS 243.650(10).

The fair share provision was included in the collective bargaining agreement for the 1975-76 academic year. The provision was to become effective only after the union provided the district with evidence that it had been approved by a majority of the bargaining unit.[2]

---

[1] ORS 243.650(10) defines "fair share agreement":

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employes whereby employes who are not members of the employe organizations are required to make an in-lieu-of-dues payment to an employe organization. Such agreement shall reflect the opinion of a majority of the employes in the bargaining unit."

[2] The fair share component was included in the collective bargaining agreement as Article 17. It provided:

"A. To assure that teachers covered by this agreement are adequately represented by the bargaining agent, the Employer shall deduct an amount each month for twelve (12) consecutive months from the pay of each teacher who is not a member of the Association beginning with the paycheck dated October 1, 1975, as a Fair Share fee. The Fair Share amount shall be as stated in subsection C. of this article. It is the intent of the parties that this article be administered so as to comply with ORS 243.666.

"B. A teacher who has not requested payroll deduction of Association dues under this agreement and who has not certified to the Employer that dues have been paid directly to the Association, shall be

On June 12, 1975, a general meeting of the bargaining unit was held to consider ratification of the proposed contract for the ensuing year. A motion to conduct a separate vote on the fair share issue was rejected by over 80 percent of the teachers voting. Those who opposed the motion for a separate vote comprised a majority of the bargaining unit.[3] Thereafter, the meeting considered the proposed contract in its entirety and voted to ratify it.

The GGTA advised the district that this ratification vote constituted evidence that the fair share provision had been approved by a majority of the bargaining unit. However, the district refused to implement the fair share provision on the ground that both ORS 243.650(10) and the collective bargaining agreement required that the provision be approved in a separate vote. The GGTA then initiated a grievance procedure, as provided for in the collective bargaining agreement, and the dispute was ultimately submitted to binding arbitration.[4]

subject to the provisions of this article. Such request for payroll deductions or certification of direct payment of dues shall be made by the fifteenth (15) day of the month prior to the month in which the deduction is to be made.

"C. The Fair Share fee shall be assessed on the following formula: 100% regular Association dues, 80% regular OEA dues, 36.6% regular NEA dues.

"D. The association agrees to provide evidence to the Employer prior to October 1, 1975 that this Fair Share Agreement is formally executed pursuant to the approval of the majority of all teachers in the bargaining unit.

"E. The association agrees to hold the employer harmless against any and all claims, suits, orders or judgments brought against the Employer as a result of the provisions of this article."

[3] There is conflicting evidence as to the number of teachers who were present and voting at the June 12 meeting. The arbitrator found that 162 of the 195 bargaining unit members participated in the vote. There is evidence in the record to support this finding.

[4] Article 5 of the collective bargaining agreement created a three-step procedure for resolving disputes arising under the agreement. For most types of disputes the third and final stage of this process was submission of

After receiving evidence and argument from both the district and the union, the arbitrator concluded that the votes conducted by the union at the June 12 meeting were sufficient to satisfy the approval requirements of both the collective bargaining agreement and ORS 243.650(10). The arbitrator reasoned that, although ORS 243.650(10) has been interpreted to require separate consideration and majority approval of a fair share agreement, *Oregon City Fed. of Teach. v. PERB,* 23 Or App 540, 543 P2d 297 (1975), this requirement was satisfied when the bargaining unit rejected the motion for a separate vote on it. Accordingly, the district was ordered to implement the fair share agreement and to account to the union for payments in lieu of dues during the term of the contract. The district did not seek administrative or judicial review of the arbitration award.

Petitioners were aware of the dispute and its submission to arbitration. Two of them offered to testify for the district, but it declined apparently because it did not consider the proffered testimony to be helpful. Petitioners did not attempt to intervene. Instead, they waited until the district withheld fair share payments from their wages, in compliance with the arbitrator's decision, and they then initiated this action.

ERB concluded that petitioners should be bound by the prior arbitration award and therefore dismissed their unfair labor practice complaint. This conclusion was based upon ERB's general policy that, under appropriate circumstances, arbitration decisions

the matter to binding arbitration. The inclusion of such a grievance procedure in a labor contract is authorized by ORS 243.706 which provides:

"(1) A public employer may enter into a written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in binding arbitration.

"(2) In addition to subsection (1) of this section, a public employer may enter into a written agreement with the exclusive representative of its employes providing that a labor dispute over conditions and terms of a contract may be resolved through binding arbitration."

should be followed in subsequent proceedings involving the same dispute. This general policy and the standard for its application were borrowed by ERB from the private sector and were first applied, although we did not reach this issue, in *Central Point Sch. Dist. v. ERB,* 27 Or App 285, 555 P2d 1269 (1976) *rev den* (1977). The test for determining whether an arbitration decision should be followed, as formulated by the National Labor Relations Board and adopted by ERB, has three parts. An arbitration decision will be honored if (1) the arbitration proceedings were fair and regular; (2) the parties had agreed to be bound thereby; and (3) the arbitrator's decision was not repugnant to the act. *See, International Harvester, Inc.,* 138 NLRB 923 (1962), *enf'd sub nom Ramsey v. NLRB,* 327 F2d 784 (7th Cir), *cert den* 377 US 1003 (1964); *Spielberg Manufacturing Co.,* 112 NLRB 1080 (1955).

In *International Harvester,* the NLRB broadly interpreted the second part of this test and ERB has adopted that interpretation. The second criterion may be satisfied, despite the fact that the parties in the second proceeding were not parties to the arbitration, if their position was adequately advocated before the arbitrator by another party who had agreed to be bound thereby.[5]

In enacting the Public Employe Relations Act (PERA), ORS 243.650 *et seq.,* the legislature made

---

[5] *International Harvester, Inc.,* 138 NLRB 923 (1962), *enf'd sub nom Ramsey v. NLRB,* 327 F2d 784 (7th Cir), *cert den* 377 US 1003 (1964), involved a dispute between union and management regarding payment of dues as required by the collective bargaining agreement. The union sought the discharge of an employe for nonpayment and management resisted. When the dispute was submitted to arbitration, the union prevailed, and the arbitrator ordered that the employe be discharged. The employe was not a party to the arbitration proceedings nor did he testify therein on behalf of the employer. Nevertheless the NLRB relied upon the arbitration award in dismissing the employe's subsequent unfair labor practice complaint. In doing so the NLRB held that management had adequately advocated the employe's position in the arbitration proceeding. *See also, Raley's Supermarkets,* 143 NLRB 256 (1963).

binding arbitration a favored means of dispute resolution, *see* ORS 243.706, 243.712(2)(c), 243.722(4), 243.742 and 243.762, because the availability of such an effective, expeditious and conclusive means of resolving labor disputes was deemed essential to the maintenance of harmonious labor relations in the public sector. *See* ORS 243.742. ERB's policy of adhering to arbitration decisions in subsequent related proceedings advances the legislative purpose and is therefore a proper exercise of its authority to administer the PERA. *Wasco County v. AFSCME,* 30 Or App 863, 569 P2d 15 *rev pending* (1977). It follows that if ERB, in holding that the policy should be applied in this case, made findings of fact based upon substantial evidence, ORS 183.482(7)(d), and rationally explained why those facts support application of the policy in this case, *see, McCann v. OLCC,* 27 Or App 487, 556 P2d 973 (1976) *rev den* (1977), then that conclusion will not be disturbed.

ERB's findings of fact describe the events which we have set forth.[6] Although there is some conflict, there is substantial evidence to support each of the findings. ERB analyzed those facts in light of the three criteria set forth above for determining whether the arbitration decision will be honored and demonstrated why its policy was satisfied.

First, ERB reasonably concluded that the arbitration proceeding was fair and regular. The order supports this conclusion by noting that the arbitration was conducted according to the procedure established in the collective bargaining agreement and that there is no evidence of fraud or collusion. The order also notes that although the district did not accept petitioners' offer to testify, neither was there any effort to prevent such testimony. Therefore, ERB concluded, the proceedings were not tainted.

---

[6]ERB's order adopted, *in toto,* the proposed rulings, findings of fact, conclusions of law and recommended order of the Board agent.

Second, ERB reasonably concluded that petitioners' position was adequately advocated by the district at the arbitration proceeding. The order notes that the district contested every issue which petitioners raise in their complaint and more.

■ Finally, ERB's conclusion that the arbitration award is not repugnant to the PERA was based upon the following reasoning:

"* * * In determining whether to honor a prior arbitration award, this Board does not approve or disapprove of the reasoning used by the arbitrator in support of his award. We merely determine whether the award is 'palpably wrong' when analyzed under the [PERA]. In the present case, a majority of the bargaining unit approved the inclusion of Article 17(D), the fair share agreement, together with the rest of the proposed collective bargaining agreement for purposes of contract ratification. The entire collective bargaining agreement was then ratified. As the arbitrator noted in his award, *Oregon City* does not require that a separate election be held to approve fair share, but only that a labor organization obtain a separate expression of approval of a majority of bargaining unit members. Under the circumstances of this case, we cannot say that the arbitrator's award was palpably wrong."

ERB thus concluded that its substantive review of arbitration decisions should be circumscribed in much the same way as is our review of agency decisions under *McCann v. OLCC.* If the arbitrator's reasoning is not fallacious, and tends to advance the purposes of the PERA, ERB will give effect to it rather than undertaking its own independent analysis of the law and facts. This limited review by ERB does not restrict this court's scope of review; nor does it insulate the arbitrator's decision from judicial scrutiny in a subsequent related proceeding. If the court concludes that an arbitration award is predicated upon fallacious reasoning or upon a clearly erroneous analysis of the PERA, then ERB's order applying the arbitrator's decision in a subsequent proceeding must necessarily

[ 548 ]

be equally deficient. Thus, by reviewing ERB's conclusion that the arbitrator's decision was not repugnant to the PERA, this court also, at least implicitly, reviews that arbitrator's decision itself.

In this case, ERB's conclusion that the arbitrator's decision was consistent with the collective bargaining law which ERB administers was rationally drawn and articulated. The June 12 vote rejecting separate consideration of the fair share provision in the contract was in effect a separate vote to include the fair share provision in the proposed contract and therefore could reasonably be regarded as a separate expression of approval. Indeed, it could hardly be reasonably regarded otherwise. Thus the order based ultimately upon that conclusion is upheld.

■ In sum, we hold that ERB's dismissal of petitioners' unfair labor practice complaint was predicated upon an expertise-based policy which ERB was empowered to adopt, *Wasco County v. AFSCME,* and that ERB's order rationally explained why the facts of this case warrant the application of that policy. *McCann v. OLCC.* Accordingly, the order was proper.

Affirmed.