Argued and submitted January 20, affirmed December 8, 1982

## WILLAMINA SCHOOL DISTRICT 30J,
*Petitioner,*

*v.*

## WILLAMINA EDUCATION ASSOCIATION,
*Respondent.*

(No. C-93-78, CA A22159)

655 P2d 189

Nancy Hungerford, Milwaukie, argued the cause for petitioner. On the brief was Bruce Bischof, Sunriver.

Henry H. Drummonds, Portland, argued the cause for respondent. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Portland.

Before Gillette, Presiding Judge, and Warden,* and Young, Judges.

YOUNG, J.

---

* Warden, J., *vice* Roberts, J.

## YOUNG, J.

This is an appeal from all Employment Relations Board (ERB) order that Willamina School District 30J (District) comply with an arbitration award rendered in favor of the Willamina Education Association (Association). This case is before us for the second time. In the prior appeal, *Willamina Ed. Assoc. v. Willamina Sch. Dist. 30J,* 50 Or App 195, 623 P2d 658 (1981), we held that ERB had applied an overly broad standard of review in determining not to enforce the award, and we remanded the case to ERB for a redetermination. On remand, under a more limited review, ERB upheld the award, and the District appeals.

Our prior opinion sets out the facts of this case in detail, and we repeat only those necessary to understanding this opinion. A dispute arose between the District and the Association as to whether two replacement teachers, who were hired for a temporary period during the 1976-77 school year, should be paid at the rate for daily substitute teachers or at the higher rate provided for teachers covered by the parties' collective bargaining agreement. The recognition clause of the agreement defined the bargaining unit as follows:

> *"Definition of Negotiating Unit:* The bargaining unit, in accordance with ORS 243.711, shall consist of all regular full-time and regular part-time (1/2 or more) certificated teachers."

Unfortunately, the agreement did not adequately define a "regular" full-time or part-time teacher,[1] and the parties could not agree whether these two teachers were regulars or substitutes.

The agreement provided for final and binding arbitration of all disputes involving the interpretation or application of specific provisions of the contract, and the Association took the issue to arbitration. The arbitrator found that the two teachers were "regular" teachers under the contract, because they performed the normal functions

---

[1] "Teacher" is defined by the agreement in this circuitous manner:

"Unless otherwise indicated, the term 'teacher' when used hereinafter in this agreement, shall refer to all professional employees represented by the bargaining (sic) in the negotiating unit as above defined * * *."

of regular full-time teachers during the period that they worked. When the District refused to honor the arbitrator's award, the Association filed an unfair labor practice complaint with ERB pursuant to ORS 243.672(1)(g).[2] As stated above, ERB refused to enforce the award, the Association appealed, and we held that ERB had used an improper standard of review. In appealing ERB's decision on remand to enforce the award, the District contends, first, that ERB again used an improper standard of review and, second, that even if the proper standard of review was used ERB erred in its application of that standard.

Under the Public Employe Collective Bargaining Act (Act), ORS 243.650 to 243.782, ERB has a statutory duty to determine whether a public employer, employe or labor organization has committed an unfair labor practice. The various types of conduct that constitute unfair labor practices are set out in ORS 243.672; among them is the violation, by either party, of any contract provision relating to employe relations, including the refusal to comply with an arbitrator's award. ORS 243.672(1)(g) and (2)(d). In the event of such a refusal, the aggrieved party files with ERB a complaint seeking enforcement of what is simply a private contractual right. ERB reviews the award to determine whether to order the resisting party to comply with it. This is known as an enforcement proceeding and is what we have here.

ERB may also review an arbitrator's award in an unfair labor practice proceeding involving non-contractual statutory rights, *i.e.*, a violation of ORS 243.672 other than (1)(g) or (2)(d). In such cases, the same alleged misconduct is proscribed by both the parties' contract and ORS 243.672. That is, the underlying conduct itself constitutes an unfair labor practice independent of the fact that it is

---

[2] ORS 243.672 provides in pertinent part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

also a violation of the contract. If the aggrieved party seeks a contractual remedy through arbitration before ERB has acted on the alleged statutory violation, then the arbitrator will often have decided the question before it comes to ERB. That is known as a deferral case. Because the Act favors the settlement of labor disputes through arbitration, ERB has decided in such circumstances to honor the arbitrator's decision, provided that it satisfies the following three-part test:

"(1) The arbitration proceedings were fair and regular; (2) the parties had agreed to be bound thereby; and (3) the arbitrator's decision was not repugnant to the act."

We approved this test in *Siegel v. Gresham Grade Teachers Assn.*, 32 Or App 541, 546, 574 P2d 692 (1978).

When ERB reviewed this award for the first time, it applied the *Siegel* test. However, ERB had previously interpreted the third part of the test to mean that "this Board reviews the merits of an arbitration award to the extent of determining whether the award is palpably wrong." *Eugene Education Association v. Eugene School District,* Case No. C-141-78, 4 PECBR 2598 (1980). ERB applied the *Siegel* test as so interpreted in this case. On appeal, we held that re-examination of the merits by ERB contravened the legislative policy that favors binding arbitration. We ordered the case remanded for "a proper interpretation and application of the law." 50 Or App at 202.

Before our first opinion in this case, however, ERB decided *Willamina Education Assocation and Barbara Crowell Lucanio v. Willamina School District,* Case No. 30-44-635, 5 PECBR 4086 (1980) *(Willamina II),* in which it adopted a new test for review of enforcement proceedings. ERB stated that henceforth it would enforce arbitration awards in enforcement proceedings unless:

"(1) The parties did not, in a written contract, agree to accept such an award as final and binding upon them (for example, an arbitrator finds no violation of the agreement, but upholds a grievance as constituting an unfair labor practice; an arbitrator exceeds a limitation on his authority expressly provided in the collective bargaining agreement); or

"(2) Enforcement of the award would be contrary to public policy (for example, the award requires the commission of an unlawful act; the arbitration proceedings were not fair and regular and, thus, did not conform to normal due process requirements)."

On remand in this case, ERB reviewed the award under the *Willamina II* test and concluded that it should be enforced.

The District contends that it was error for ERB to review the arbitrator's award under a test other than that approved by this court in *Siegel.* We do not agree. ERB originally adopted the *Siegel* test in the context of a deferral proceeding but later extended its application to enforcement proceedings. It is the same test adopted by the National Labor Relations Board in *Spielberg Manufacturing Co.,* 112 NLRB 1080 (1955), in the federal analog to a deferral case. ERB's interpretation of that test, however, led to its reviewing the merits of an arbitrator's award to determine whether that award was palpably wrong. We held in our original opinion in this case that the *interpretation* of the test we had approved in *Siegel* was inappropriate. However, before that opinion from this court, ERB itself recognized that, at least in the context of enforcement proceedings,[3] Board review of the merits of an arbitration decision was inconsistent with the policy of this state favoring binding arbitration of collective bargaining disputes.

In adopting the *Willamina II* test, ERB stated:

"The standards [previously adopted] are substantially different from the review standards applied in the U. S. Supreme Court in the *Steelworkers Trilogy* and by the Oregon appellate courts in cases discussed below. In addition, the third element of the standard is so vague and broad that it militates against the PECBA policy of encouraging mutually-agreed upon grievance and arbitration procedures to resolve labor disputes. (See ORS 243.650(21), 243.656(5), 243.706(1) and, of course, 243.672(1)(g) and (2)(d)).

---

[3] ERB indicated that it would continue to apply the *Siegel* test in deferral cases. We express no opinion as to whether ERB could appropriately apply *Siegel* as it had interpreted it, that is, to review the merits of the award to the extent necessary to determine whether it is palpably wrong in deferral cases.

"This Board believes that the policies of the PECBA will be better effectuated if it restricts its review of arbitration awards in (1)(g) and (2)(d) complaints to the stricter standards generally followed by federal and Oregon courts. (To this extent, this Board views its role under (1)(g) and (2)(d) to be analagous to that of the federal courts under Section 301 of the Labor Management Relations Act.)

"The leading case concerning the scope of review of an arbitrator's award is *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 US 593, 46 LRRM 2423 (1960), in which the United States Supreme Court said:

" 'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards * * *.'

"This position is in sharp contrast to the statement of this Board * * * that, under its test, 'this Board reviews the merits of an arbitration award to the extent of determining whether the award is palpably wrong.' " (Footnote omitted.)

The Board further relied on *Brewer v. Allstate Insurance Co.*, 248 Or 558, 436 P2d 547 (1968); *Wagner v. Columbia Hospital Dist.*, 259 Or 15, 485 P2d 421 (1971); and *Corvallis Sch. Dist. v. Corvallis Education Assn.*, 35 Or App 531, 581 P2d 972 (1978), for the proposition that the policy of this state favors the finality of arbitration awards in the collective bargaining context, as well as the commercial context. It determined that review of the merits of an arbitrator's award, even to the limited extent of determining whether the award is "palpably wrong," would undermine that policy. That is the same conclusion reached by this court in our original decision in this case.

■      We conclude that ERB's formulation of the test it will apply in reviewing arbitration awards in enforcement proceedings is consistent with the policies of the Public Employe Collective Bargaining Act. We now turn to the question of whether ERB correctly applied that test in this case. *See Eugene Educ. Assoc. v. Eugene School Dist. 4J*, 58 Or App 140, 648 P2d 60 (1982).

■     The District contends that the award cannot be enforced, because the arbitrator exceeded "a limitation on his authority expressly provided in the collective bargaining agreement." The contract provided:

> "The arbitrator shall be without power or authority to make any decision which requires the commission of [an] act prohibited by law or which is violative of the terms of this Agreement. The arbitrator shall not add to, subtract from, modify or amend any terms of this Agreement, nor shall he impose any obligations on the Association or the District not expressly agreed to by the terms of this Agreement. The decision of the Arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties within the scope of the Arbitrator's authority."

The District argues that the arbitrator exceeded his authority, because the District at no time "agree[d] to include substitute or temporary teachers in the collective bargaining unit and thus grant them the protection of the grievance clause." This begs the question of whether these teachers were substitutes or regular teachers. More important, this argument goes directly to the merits of the dispute, *i.e.,* the parties' intentions in writing the contract. All that the District is saying is that the arbitrator exceeded his authority because, by adding an obligation, he was wrong in his interpretation of the contract. Whether the arbitrator correctly interpreted the contract is the very question that neither ERB nor this court canl consider on review. *Eugene Educ. Assoc. v. Eugene School Dist. 4J, supra.*

With respect to the public policy standard of the *Willamina II* test, the District contends that the award is against public policy, "because it ignores a distinction between substitute and regular teachers that is established by the Oregon statutes." For the proposition that Oregon statutes "establish" a distinction between substitute and regular teachers, the District relies on the definition section (ORS 342.815) of the Oregon Fair Dismissal Law, ORS 342.805 to 342.955. That statutory scheme establishes certain rights and procedures regarding the termination of employment of Oregon school teachers, and those rights vary depending on the status of the teacher. To that end,

ORS 342.815 defines "permanent", "substitute" and "temporary" teachers (but "regular" teacher is not defined). Even if these two teachers came within the meaning of "substitute" as defined by ORS 342.815, the award would not contravene public policy. Those *definitions* do not by themselves establish any public policy. They are for purposes of the Fair Dismissal Law only, ORS 342.815, and this case has nothing to do with teacher dismissal.[4]

The District also argues that the award violates public policy, because it had the effect of including in the bargaining unit two teachers not expressly covered by the agreement. It contends that this is incompatible with ERB's role in determining bargaining unit membership under ORS 243.682(1). ERB rejected that argument:

> "In addition and contrary to the assertions of the Respondent in its brief, enforcement of the award would not be contrary to public policy. The arbitrator in this case is not determining the composition of the bargaining unit; that determination was made by the parties when they agreed on the unit description."

We agree. Notwithstanding ORS 243.682(1), a public employer and a labor organization may voluntarily agree on the appropriate bargaining unit without ERB involvement. ORS 243.666(3).[5] Here, the District and the Association agreed that regular teachers are part of the bargaining unit and that substitutes are not. The arbitrator respected that distinction; he simply applied his judgment in classifying the two teachers at issue here. ORS 243.682(1) does not require ERB, rather than the arbitrator, to decide that question.

---

[4] The District also argues that the award "contradicts" ORS 342.610(2), which provides for a *minimum* level of compensation for substitutes. If this award resulted in *less* compensation for these temporary teachers than is required by that statute, there might be a contradiction. ORS 342.610(2) does not set a ceiling, however, and it does not contradict that statute to pay these teachers *more* than is required.

[5] ORS 243.666(3) provides:

> "Nothing in this section prevents a public employer from recognizing a labor organization which represents at least a majority of employes as the exclusive representative of the employes of a public employer when the board has not designated the appropriate bargaining unit or when the board has not certified an exclusive representative in accordance with ORS 243.686."

Finally, the District seems to contend that the award is repugnant to public policy, because the arbitrator was apparently influenced by *Lommasson v. School Dist. No. 1,* 201 Or 71, 261 P2d 860, 267 P2d 1105 (1954), in concluding that "it is the functions [the teachers] performed, rather than the title assigned to them, that should determine their classification." We do not understand the arbitrator to have relied on *Lommasson* inappropriately. In interpreting the contract provision, he noted in passing that his conclusion agreed with the discussion in the *Lommasson* case, which had been cited by the Association.[6] It is clear, however, that he was performing his proper function in determining the intended meaning of ambiguous contract terms. We conclude that ERB applied the test appropriately.

Affirmed.

---

[6] The initial issue before the arbitrator was whether this dispute was arbitrable under the contract. When the arbitrator deferred a decision on that issue until he had taken evidence on the substantive question, the District refused to participate further in the proceedings. The arbitrator proceeded to decide the case *ex parte* pursuant to the rules of the American Arbitration Association.