Argued and submitted November 10, 1999, remanded August 30, 2000

# DESCHUTES COUNTY SHERIFF'S ASSOCIATION,
## *Petitioner,*

*v.*

# DESCHUTES COUNTY
## and Deschutes County Sheriff's Office,
### *Respondents.*

## (UP-55-97; CA A104639)

9 P3d 742

Rhonda Fenrich argued the cause and filed the brief for petitioner.

Nancy Hungerford argued the cause for respondent. With her on the brief were Andrea L. Hungerford, Brian J. Hungerford, and The Hungerford Law Firm, L.L.P.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

The Deschutes County Sheriff's Association (Association) appeals from an Employment Relations Board (ERB) order concluding that Deschutes County and the Deschutes County Sheriff's Office (County) did not commit an unfair labor practice by refusing to comply with an arbitration award that required the County to reinstate a corrections officer who was disciplined for an incident involving the use of a chemical agent on an inmate.

An arbitrator concluded that the County lacked just cause to discipline the officer under the parties' collective bargaining agreement because the conduct for which he was disciplined did not violate any established departmental policy. The arbitrator went on to find, however, that the officer had engaged in other misconduct. But, because, in the arbitrator's opinion, *that* misconduct was not the reason given for discipline, and because the parties' collective bargaining agreement allowed the arbitrator to consider only whether just cause existed for discipline that *was* imposed, the arbitrator awarded reinstatement of the officer. When the County refused to comply with the arbitration award, the Association filed an unfair labor practice complaint with ERB. ERB concluded that the County's refusal to comply was not an unfair labor practice because the award violated public policy and was therefore unenforceable under ORS 243.706. In reaching that conclusion, ERB relied on the arbitrator's findings concerning the officer's undisciplined misconduct—findings that the arbitrator concluded were beyond the scope of arbitration under the parties' collective bargaining agreement. We hold that ORS 243.706 does not apply under these circumstances and that ERB erred in concluding that the County did not commit an unfair labor practice.

The facts are as follows. On September 4, 1995, corrections officers Squier and Kester conducted an early morning head count at the county jail. Squier, as the senior officer, decided to move Palmer, an uncooperative and verbally abusive inmate, to another cell—cell number 302. When Palmer repeatedly refused to enter cell 302, Squier sprayed him in the face with Capstun foam. Palmer entered cell 302 but continued his verbal abuse. Squier decided to move him again,

this time to the booking area where he could be observed more closely. When Palmer refused to submit to restraints, another corrections officer, Moor, fogged cell 302 with Capstun spray. Although Palmer then complied with the officers' instructions, Squier reportedly sprayed Palmer in the face again, without warning, while removing him from the cell.

Subsequently, Kester lodged a complaint against Squier, alleging that Squier had used inappropriate force—three applications of Capstun—and that Squier had filed an inaccurate report about his use of force. An internal investigation by the sheriff's office determined (1) that Squier's use of Capstun foam to get Palmer into cell 302 was lawful and proper; (2) that the second "fogging" discharge by Moor was an inappropriate use of force for which Squier, as the senior officer at the scene, was vicariously responsible; and (3) that charges related to the third discharge of Capstun could not be sustained because of conflicting testimony about whether it even occurred. The investigator also concluded that there was insufficient evidence to sustain the falsification charge against Squier.

On January 29, 1996, Sheriff Davidson suspended Squier for four days without pay, stripped him of his duties as department firearms instructor, and removed him from the reserve deputy program. The sheriff's letter notifying Squier of the discipline stated:

"I am in receipt of the reports concerning the Internal Investigation that was conducted with regard to your actions. I have also interviewed you regarding these matters. (A packet of the entire investigation has been made available to you.)

"Based upon the findings of this Internal Affairs Investigation you have been found in violation of the following:

"USE OF FORCE POLICY # 4.070

"Section 3D - Use of a Chemical Agent
"Section 3F - Use of Force Guidelines
"Section 3H - Documentation

"DUTIES OF A CORRECTIONS OFFICER # 2.030"

On February 7, 1996, the Association filed a grievance on Squier's behalf, alleging that discipline was imposed

without just cause. Under the parties' collective bargaining agreement, an arbitration hearing was conducted on February 14 and April 18, 1997. The parties' arbitration submission stipulated that the issues were limited to: (1) "[w]hether the County had just cause to suspend Corrections Officer Squier for four (4) days;" and (2), "[i]f not, what is the appropriate remedy?" After the hearing, the arbitrator made numerous findings of fact, including:

"4. [Squier] discharged Capstun pepper foam alongside Palmer's face without prior warning. [And] did not provide [him] with water or other agents with which to clean the pepper spray from his face and head.

"* * * * *

"8. [Squier] indicated to Moor that he wished to spray Capstun into cell 302 for the purpose of incapacitating and controlling Palmer so that he could be extracted from cell 302.

"9. Moor—who carried a particulate form of Capstun rather than the foam possessed by [Squier]—sprayed the chemical into cell 302 through the food slot. The cell and surrounding area were heavily dosed with pepper spray particulate. An emergency door providing access to the outside from the jail had to be opened in order to ventilate the area. Fresh bedding had to be given prisoners in block 300 because of the pervasiveness of the chemical residue.

"10. Palmer complied with [Squier's] commands after having his cell sprayed with Capstun. Moor and [Squier] entered cell 302 and placed handcuffs on Palmer's wrists to transport him to an observation cell. This 'cell extraction' procedure departed significantly from the methods in which [Squier] and other officers of the Department had been trained.

"11. Officer Kester was outside cell 302 and had been joined by Corrections Officer Oden. With Kester and Oden observing, [Squier], while kneeling beside Palmer during the handcuffing process sprayed Palmer in the face with Capstun a third time without warning.

"* * * * *

"16. A supervisor ordered [Squier] to prepare a second Use of Force Report about the incident. [Squier] did so on

September 18, 1995. In this report, [Squier's] description of the incident was somewhat different from his earlier version."

Despite those findings, the arbitrator reinstated Squier. According to the arbitrator, "[i]t is an axiom of arbital law that discipline must either stand or fall upon the reasons given at the time discipline is imposed." Thus, in the arbitrator's view, it is not the arbitrator's task, under the collective bargaining agreement, to determine whether *some* reason for discipline exists but, rather, to determine whether just cause existed for the reason or reasons given at the time discipline was imposed.[1]

In this case, the arbitrator, relying on the sheriff's letter, determined that Squier's discipline was exclusively "[b]ased upon the findings of [the] Internal Affairs Investigation." That investigation, the arbitrator explained, absolved Squier of misconduct on three of four allegations, leaving the second allegation—Squier's vicarious responsibility for Moor's actions—as the sole reason given for discipline. Thus, despite coming to the opposite conclusion on allegations three and four, the arbitrator considered only whether just cause existed to discipline Squier based on the second allegation, because that was the only reason given at the time discipline was imposed. The arbitrator then held that the sheriff lacked just cause to discipline Squier because the County failed to prove the existence of any policy imposing vicarious responsibility on senior officers for the improper conduct of junior officers.

The arbitrator retained jurisdiction over the award for 60 days "to resolve any disputes or questions in connection with the remedy ordered." The County did not challenge

---

[1] Paragraph 36, subparagraph B, of the parties' collective bargaining agreement (July 1, 1995 to June 30, 1998) provided:

"Discipline may be invoked by the Sheriff only for just cause. Conduct reflecting discredit upon the Sheriff's Department, or which is a hindrance to the effective performance of County functions, shall be considered reason for disciplinary action. Such reason may include but not be limited to, misconduct, inefficiency, incompetence, insubordination, misfeasance, malfeasance, the willful giving of false information, or the withholding of information, and violation of Departmental rules. Disciplinary action need not be progressive, but shall be appropriate for the nature of the offense committed."

the award but instead simply refused to reinstate Squier. On October 27, 1997, after the arbitrator's jurisdiction had lapsed, the Association filed this unfair labor practice action with ERB, contending that the County's refusal to comply with the award violated ORS 243.672(1)(g).[2] The County answered that implementing the award would violate public policy against the excessive use of force. ERB agreed, finding that the County did not violate ORS 243.672(1)(g) because the award is unenforceable under ORS 243.706.

Reasoning that its duty to review the enforceability of arbitration awards cannot be waived by the parties' action or inaction, ERB initially determined that the County's failure to challenge the award within 60 days in no way precluded ERB from considering the enforceability of arbitration awards.[3] ERB then applied ORS 243.706 and, in so doing, determined that it would consider:

"(1) Whether the employee was found by the arbitrator to be guilty of the misconduct for which discipline was imposed;

"(2) Whether the award relieved the employee of responsibility for the misconduct; and

"(3) Whether there is a clearly defined public policy in statutes or judicial decisions that apply to the award."

In its three-part test, ERB began with a review of the arbitrator's findings, concluding that "the arbitrator found [Squier's] conduct blameworthy[.]" Specifically, ERB noted that, according to the arbitrator, Squier sprayed Palmer in the face with Capstun without warning, while Palmer was compliant, and then provided misleading reports that were

---

[2] ORS 243.672 provides, in part:

"(1) It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

[3] On appeal, the Association does not challenge ERB's determination in this regard. Therefore, we accept it for the purpose of this case.

"less than candid." Second, ERB concluded that the arbitrator's award, reinstating Squier, relieved him of responsibility for that misconduct. Finally, citing Oregon statutes and federal case law, ERB determined that there is a clearly defined public policy prohibiting the excessive use of force against prisoners.[4] *See* ORS 161.025(g) (setting out general purposes of criminal statutes including safeguarding offenders from excessive or arbitrary punishment); *see also Soto v. Dickey*, 744 F2d 1260, 1270 (7th Cir 1984), *cert den* 470 US 1085 (1985) (declaring that "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain"). ERB ruled that the award was unenforceable under ORS 243.706 because Squier's reinstatement would relieve him of responsibility for misconduct in violation of the public policy against the excessive use of force.[5] Based on that ruling, ERB concluded that the County's refusal to comply with the arbitration award was not an unfair labor practice under ORS 243.672(1)(g).

■ On appeal, the Association presents two assignments of error. First, the Association contends that ERB improperly applied ORS 243.706 and, as a result, erroneously concluded that the County did not commit an unfair labor practice under ORS 243.672(1)(g). Second, the Association contends that ERB's order impairs the right of its members to contract, in violation of Article I, section 10, of the

---

[1] ORS 161.015(6) defines "physical force" as including, but not limited to, "the use of an electrical stun gun, tear gas or *mace*." (Emphasis added.)

[5] Because our disposition of this case does not require us to examine its sufficiency, we do not adopt or reject ERB's three-part test. However, we note that, in applying ORS 243.706, ERB purported to refrain from "impos[ing] itself into the arbitration process to do a right/wrong analysis." Yet, in response to part one of its own test—whether the arbitrator found Squier guilty of the misconduct for which discipline was imposed—ERB concluded that the arbitrator found Squier's conduct blameworthy, and that Sheriff Davidson disciplined Squier for his egregious use of physical force. As explained above, the arbitrator found that the only reason given for disciplining Squier was his status as the senior officer present when another officer violated the department's use of force policy. The arbitrator specifically found that Squier was *not* guilty of the misconduct for which discipline was imposed or, more accurately, that his conduct could not be defined as misconduct. Thus, it appears that ERB did engage in a right/wrong analysis by substituting its findings for those of the arbitrator. However, that observation does not resolve the larger question concerning the applicability of ORS 243.706. Therefore, we do not decide the case on that basis.

United States Constitution. We do not reach the constitutional issue because we find the Association's first assignment dispositive.

We first consider whether ORS 243.706 applies in this case. Resolution of this question requires us to interpret the statute. When interpreting a statute, we first look to its text and context as "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). Giving the text its plain, natural and ordinary meaning, "we ascertain and declare what is, in terms or in substance, contained therein" without inserting what has been omitted, or omitting what has been inserted. *Id.* at 611. Context may include "other provisions of the same statute and related statutes, prior enactments and prior judicial interpretations of those and related statutes, and the historical context of the relevant enactments." *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044, *rev den* 329 Or 447 (1999) (citations omitted). Only if the legislature's intent is not clearly expressed in the text and context of the statute do we consider its legislative history. *Id.*

ORS 243.706(1) provides, in part:

> "As a condition of enforceability, any arbitration award that orders the reinstatement of a public employee or otherwise relieves the public employee of responsibility for misconduct shall comply with public policy requirements as clearly defined in statutes or judicial decisions including but not limited to policies respecting sexual harassment or sexual misconduct, unjustified and egregious use of physical or deadly force and serious criminal misconduct, related to work."

Under the statute, it is the *award* that must comply with public policy. Interpreting an earlier version of ORS 243.706, we acknowledged ERB's determination that an arbitration award would be unenforceable as violative of public policy if it "requires the commission of an unlawful act" or if "the arbitration proceedings were not fair and regular and, thus, did not conform to normal due process requirements." *Willamina Ed. Assoc. v. Willamina Sch. Dist. 30J*, 50 Or App 195, 202 n 7, 623 P2d 658 (1981) (*Willamina I*). The County argues that amendments to ORS 243.706 made long after

*Willamina I* was decided should be interpreted as supplemental to the limitations on enforceability expressed in that case. As we understand the County's argument, an arbitration award that reinstates an employee, who is found *not guilty* of the misconduct for which he was disciplined, may be rendered unenforceable by findings of misconduct that are beyond the arbitrator's authority to consider under the collective bargaining agreement.

■     We reject that argument. An "award" is defined as "a final judgment or decision, esp. one by an arbitrator[.]" *Black's Law Dictionary,* 132 (7th ed 1999). Previously, we have stated that an arbitrator's authority to enter final judgment "is legitimate only so long as it draws its essence from the collective bargaining agreement." *Willamina I,* 50 Or App at 202 n 7, *quoting United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 US 593, 597, 80 S Ct 1358, 4 L Ed 1424 (1960); *see also Eugene Educ. Assoc. v. Eugene School Dist. 4J,* 58 Or App 140, 147, 648 P2d 60 (1982) (arbitrator's determination that no contract violation occurred divested the arbitrator of authority to enter an award). In binding arbitration, the parties agree to have their contractual disputes resolved by an arbitrator, within the scope of the parties' submissions. An arbitrator's authority to enter judgment—in the form of an award—is governed by the parties' collective bargaining agreement. Findings made beyond the scope of that agreement are not within the arbitrator's jurisdiction, and, consequently, no award may be entered based on such findings.

The County points to nothing, nor do we find anything, in the text or context of ORS 243.706 to suggest that the legislature intended to alter that principle by giving legal significance to what are, essentially, gratuitous findings. *Edwards v. Bonneville Auto. Ins. Co.,* 299 Or 119, 127, 699 P2d 670 (1985) (legislative silence is not evidence of an intent to change substantive aspects of established public policy). We therefore conclude that findings made by an arbitrator that are beyond the scope of the parties' collective bargaining agreement are not part of an arbitration award.

Here, under the parties' collective bargaining agreement and arbitration submissions, *see* 169 Or App at 449 and

450 n 1, the question before the arbitrator was whether Squier engaged in the conduct for which he was disciplined—and not whether he engaged in other conduct for which he could properly have been disciplined but was not. The arbitrator determined that Squier was *not guilty* of the misconduct for which he was disciplined. The arbitrator also found that Squier was not disciplined for other misconduct. It does not matter if the County, ERB, or this court agrees with that determination. *Eugene,* 58 Or App at 151-52 (upholding ERB's decision not to revisit an arbitrator's unambiguous ruling even though it appeared to be "self-contradictory, confusing or wrong"). The point is that the County agreed to resolve labor disputes through binding arbitration, and, subject to certain limitations that do not apply here, it must accept the outcome. *Willamina Sch. Dist. 30J v. Willamina Ed. Assn.*, 60 Or App 629, 635, 655 P2d 189 (1982) (on appeal following remand of *Willamina I*, this court explained that the refusal of Oregon courts to review the merits of an arbitration award is consistent with state and federal policy favoring the finality of arbitration awards).

Based on the foregoing, we conclude that ERB erroneously applied ORS 243.706 in this case. ERB's holding would undermine the finality of arbitration by allowing ERB to consider any finding an arbitrator sees fit to make, regardless of its bearing on the parties' contractual dispute. It follows that the County's refusal to comply with the arbitration award is an unfair labor practice under ORS 243.672(1)(g).

Remanded for further proceedings not inconsistent with this opinion.