Argued and submitted July 8, reversed and remanded on petition, affirmed on cross-petition October 30, reconsideration denied December 13, 1985, petition for review denied February 11, 1986 (300 Or 545)

**BEAVERTON EDUCATION ASSOCIATION,**
*Petitioner - Cross-respondent,*

*v.*

**WASHINGTON COUNTY SCHOOL DISTRICT NO. 48,**
*Respondent - Cross-petitioner.*

(ERB C-119-83; CA A33308)

708 P2d 633

Henry H. Drummonds, Portland, argued the cause for petitioner - cross-respondent. With him on the briefs was Kulongoski, Durham, Drummonds & Colombo, Portland.

David W. Morthland, Portland, argued the cause for respondent - cross-petitioner. With him on the brief were James N. Westwood and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Beaverton Education Association (Association) seeks review of the Employment Relations Board's dismissal of Association's unfair labor practice complaint against School District No. 48 (District). The complaint alleged that District had violated ORS 243.672(1)(g) by refusing to comply with an arbitration award.[1] The principal issue is whether the award concerned a matter that is subject to arbitration under the parties' collective bargaining agreement. District cross-petitions, contending that ERB erred by excluding certain evidence. We reverse and remand on the petition and affirm on the cross-petition.

In March, 1982, District dismissed Alvin D. Pecka, a permanent teacher represented by the Association, because of an episode involving inappropriate discipline of a student. There had been several earlier episodes in which Pecka had lost his temper with or imposed excessive discipline on students. The precipitating episode occurred more than five months before the dismissal, and lesser alternatives were pursued before the superintendent recommended Pecka's dismissal to District's board. In September, 1982, the Fair Dismissal Appeals Board affirmed the dismissal.

After District dismissed Pecka, he filed a grievance, alleging that District had "failed to follow the evaluation procedures" required by its Personnel Evaluation and Professional Development Policy. The grievance was rejected at the various levels specified in the collective bargaining agreement, and Association then invoked the contractual arbitration procedure. The arbitrator concluded that the grievance was arbitrable, that District had not followed required evaluation procedures and that Pecka was entitled to be reinstated as a teacher under the intensive component of the evaluation program. District refused to comply with the award, and it contended before ERB, *inter alia,* that the matter was neither grievable nor arbitrable under the collective bargaining agreement. ERB agreed.

---

[1] ORS 243.672(1)(g) makes it an unfair labor practice for a public employer to violate a written agreement pertaining to employment relations, "including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

The agreement provides, in relevant part:

"ARTICLE 4

"GRIEVANCE PROCEDURES

"* * * * *

"A.   Definitions

"1.   A 'grievance' is a contention or a claim by a teacher or class of teachers that there has been to him/her a personal loss or injury resulting from a violation or inequity in the application or interpretation of the terms of this Agreement. 'Personal loss' or 'injury' shall mean that the grievant has been directly affected in a substantive way as a result of the alleged violation of the Agreement.

"A grievance shall not include, and this grievance procedure shall not apply to any of the following:

"* * * * *

"b.   Any proceeding for dismissal of permanent teachers or non-renewal of probationary teachers;

"* * * * *

"d.   Evaluations and targets are not grievable except for violations of procedural requirements and timelines contained in the District's Personnel Evaluation Program and ORS 342.850.

"* * * * *

"B.   Levels and Steps

"* * * * *

"Level IV - Arbitration

"Definition of Grievances Subject to Arbitration. Insofar as the [District] Board's decision is alleged by the aggrieved to be a violation, misinterpretation or erroneous application of a specific provision of this Agreement * * *, the aggrieved may submit his/her claim to the Association. The Association shall then determine whether or not to submit the grievance to arbitration.

"* * * * *

"Step 3 (Arbitration Hearing)

"* * * The arbitrator's decision shall be in writing and shall set forth his/her findings of fact, reasoning and conclusions on the issues submitted in accordance with the definition of grievances subject to arbitration. The arbitrator may

not add to, subtract from, or amend the terms of this Agreement and shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement. Insofar as his/her decision involves only matters subject to arbitration as above defined and is based on substantial evidence, such decision shall be final and binding on the aggrieved, all personnel of the District and the parties of this Agreement. If a question of arbitrability or grievability arises over an alleged violation of the terms of this Agreement the arbitrator shall rule on those questions before considering the merits of the grievance."

The arbitrator concluded that the matter was grievable and arbitrable, because:

"[B]y distinguishing grievable 'violations of procedural requirements and timeliness' * * * from non-grievable 'proceeding[s] for dismissal' * * *, the parties intended [in the agreement] to make procedural irregularities connected with evaluations and targets severable from any dismissal which might or might not follow the evaluation irregularities. The arbitrability of those procedural irregularities is not anywhere stated to be contingent on whether the employee alleging the irregularities is subsequently dismissed. * * * [A]rbitrability requirements are satisfied as long as the grievance, insofar as may be determined without inquiry into the actual merits of the grievance, seeks to grieve only alleged procedural irregularities."

The arbitrator's reasoning on the merits was that, under the District's evaluation program, as she construed it, immediate dismissals are permissible only in the case of teachers with "particularly critical deficiencies"; however, intermediate "intensive evaluation component" procedures must be followed before there can be a dismissal of a teacher who is merely "critically deficient." Because District had not taken immediate action to dismiss Pecka after the disciplinary episode and because its administrators had indicated that the disciplinary episode alone would not warrant dismissal, the arbitrator concluded that Pecka could not "arguably" be viewed as "particularly critically deficient."

ERB concluded that the agreement did not give the arbitrator authority over the grievance. It explained:

"Reading the arbitrator's opinion as a whole reveals the following major points:

"(1) The arbitrator has no jurisdiction to substitute her judgment for that of the District concerning the merits of a District decision to dismiss a teacher.

"(2) A particularly critical deficiency is one for which the District may dismiss a teacher without placing the teacher on an intensive evaluation component.

"(3) The District dismissed Pecka for certain reasons without placing him on an intensive evaluation component. The District therefore must have determined that Pecka had a particularly critical deficiency.

"(4) Pecka did not suffer from a particularly critical deficiency.

"(5) The District therefore could not dismiss Pecka without first placing him on the intensive component, because to do so violates the evaluation provisions of the contract.

"Even if we accept without review all of these points as true (which, except for point no. (1), we must), we cannot enforce the award. It is clear that, when she determined that Pecka did not have a particularly critical deficiency, the arbitrator said that the District did not have sufficient reason to terminate Pecka. Indeed, that is the only way she could find that the evaluation provisions at issue were violated. By the arbitrator's own interpretation of the terms of the Beaverton contract, the District is *required* to place a deficient teacher on an intensive evaluation component (rather than dismiss the person) only if the teacher's deficiencies are not sufficient to justify an immediate recommendation for dismissal. When the arbitrator decided that Pecka's deficiencies were not particularly critical—i.e., did not *merit* immediate dismissal, she exceeded the limitation on her authority she herself acknowledged (point no. (1) above).

"Because we can say with positive assurance that the arbitrator had to exceed her authority in order to render the Pecka award, we cannot enforce the award." (Emphasis in original)

In an opinion on reconsideration, ERB further explained that, unlike the very limited scope of review it exercises over arbitrators' interpretations of contractual provisions other than those that define their authority, ERB must conduct "right-wrong" review over questions of "substantive arbitrability." ERB stated:

"In order to carry out our duty concerning the first part of

the *Willamina [Education Association 30J and Barbara Crowell Lucianio v. Willamina School District No. 30-44-63J,* Case No. C-253-79, 5 PECBR 4086 (1980)]* test, we may have to decide whether an arbitrator was right or wrong in his conclusion concerning his authority. Complainant seems to argue that, so long as an arbitrator bases his conclusion concerning his own authority on the language of the contract, this Board should defer to that determination because '[i]t is the arbitrator's, not ERB's interpretation of the contract that the parties bargained for in their contract.' * * * This argument ignores the fact that if an arbitrator clearly exceeds his authority his 'award would not be an award that the parties had agreed to make final and binding upon them.' *Willamina, supra,* 5 PECBR at 4099. For example, if an arbitrator were to reinstate a probationary teacher because the arbitrator interpreted a 'just cause for discipline' provision as giving him the authority to review a nonrenewal on its merits, we could not enforce such an award. The arbitrator's decision concerning his authority in such a case, even though based on contract language, would be wrong."

Association assigns error to ERB's disposition of the complaint and to the standard of review ERB applied to the arbitrator's decision.

There are at least two areas of confusion that are reflected in District's arguments and in ERB's orders. The first is between the arbitrator's decision on the arbitrability question and her decision on the merits. The second is between the arbitrability of the evaluation issues and the non-arbitrability of the dismissal itself. The second point of confusion is exacerbated by the fact that the arbitrator's remedy for District's violation of the evaluation requirements was, in effect, to nullify the dismissal, at least pending the completion of intensive evaluation component procedures.

■ We conclude initially that the *basis* for ERB's ruling that the arbitrator acted without authority misses the mark. The arbitrator's reasoning on the *arbitrability* question turned on the "severability" of the contractual provisions that dismissal proceedings are not grievable and that evaluation procedural requirements are grievable. Rather than focusing on that aspect of the arbitrator's analysis, ERB based its disposition of the arbitrability issue on the arbitrator's discussion of the *merits*. ERB understood the arbitrator's conclusion that Pecka was not particularly critically deficient as meaning

that she had found that he did not merit immediate dismissal. We understand the conclusion to mean that, by not placing Pecka in the intensive evaluation component under these circumstances, District violated its evaluation procedures. Under either understanding, however, that conclusion of the arbitrator has no bearing on whether she had *authority* to arbitrate the grievance concerning *the evaluation procedures.* Even if ERB's understanding of what the arbitrator concluded were correct, it *might* follow that in one particular the arbitrator confused dismissal-related matters with evaluation-related matters; but it would not follow that she did not have authority to consider the latter or that no remedy based on her consideration of the latter could be awarded. *See* n 3, *infra.*

■        Although we have already said enough to explain why reconsideration by ERB is necessary, we think that further discussion now may prevent further error later in the proceedings. District argues and ERB decided that an arbitrator's conclusion that an agreement makes a subject arbitrable is fully reviewable by ERB and the courts for errors in the interpretation of the agreement. That standard of review would differ drastically from the *general* standard ERB and the courts apply in reviewing an arbitrator's interpretation of an agreement. We stated in *Eugene Educ. Assoc. v. Eugene School Dist. 4J,* 58 Or App 140, 648 P2d 60 (1982), that, under our previous decisions,

> "ERB's substantive review of the merits of arbitration awards is appropriately limited to the inquiry whether 'the arbitrator's decision [is] repugnant to the [Public Employes' Collective Bargaining] act.' The 'repugnancy' test of those cases can be viewed as an analog of the review standard articulated in *Brewer [v. Allstate Insurance,* 248 Or 558, 436 P2d 547 (1968)] for appeals in commercial arbitration cases, *i.e.,* whether the arbitrator's ruling is 'so grossly erroneous as to strike at the heart of the decision-making process.' For purposes of the narrow issue in this case — whether the arbitrator's putatively erroneous interpretation of the agreement should be reexamined on review — we hold that the 'repugnancy' test we have approved in the public sector collective bargaining context and the 'grossly erroneous' test enunciated in *Brewer* are equivalent." 58 Or App at 150.

We also noted:

"The arbitration forum was of the Association's and the district's choosing. Arbitration has certain advantages and disadvantages that are not common to other forums, but like any other forum, arbitration carries with it the inherent risk that the effective final decision-maker will be wrong. For reasons previously stated, we do not find the fact that the arbitrator may have been wrong here to be a basis for reversing his conclusion of law; and we also find that that fact is not a basis for remanding the matter to him to make a second decision which the Association might consider right." 58 Or App at 153.

In its opinion on reconsideration, ERB concluded that a much broader scope of review should apply when ERB considers an arbitrator's interpretation of the provision of the agreement that defines his or her authority. ERB relied on its test, which we quoted and approved in *Willamina Sch. Dist. 30J v. Willamina Ed. Assn.,* 60 Or App 629, 655 P2d 189 (1982):

"Before our first opinion in this case, however, ERB * * * adopted a new test for review of enforcement proceedings. ERB stated that henceforth it would enforce arbitration awards in enforcement proceedings unless:

" '(1) The parties did not, in a written contract, agree to accept such an award as final and binding upon them (for example, an arbitrator finds no violation of the agreement, but upholds a grievance as constituting an unfair labor practice; an arbitrator exceeds a limitation on his authority expressly provided in the collective bargaining agreement); or

" '(2) Enforcement of the award would be contrary to public policy (for example, the award requires the commission of an unlawful act; the arbitration proceedings were not fair and regular and, thus, did not conform to normal due process requirements).' " 60 Or App at 633.

We do not agree with ERB's understanding that the *Willamina* test requires a broader scope of administrative or judicial review of arbitrators' interpretations of arbitrability provisions than their interpretations of any other contractual language. The *Willamina* test circumscribes ERB's scope of review in cases involving contractual interpretation by arbitrators. It is true that the test creates an exception to the general rule of enforceability when "an arbitrator exceeds a *limitation* on his authority *expressly provided* in the collective bargaining agreement." (Emphasis supplied.) That does not

mean, when there is no such express limitation in an arbitrability provision, that the interpretation of that provision is any less subject than other provisions to the arbitrator's authority[2] or any more subject to ERB's review.

ERB's present understanding of the *Willamina* test is largely belied by our conclusion in *Willamina* that ERB had correctly applied the test by rejecting the contention

"that the award cannot be enforced, because the arbitrator exceeded 'a limitation on his authority expressly provided in the collective bargaining agreement.' The contract provided:

'The arbitrator shall be without power or authority to make any decision which requires the commission of [an] act prohibited by law or which is violative of the terms of this Agreement. The arbitrator shall not add to, subtract from, modify or amend any terms of this Agreement, nor shall he impose any obligations on the Association or the District not expressly agreed to by the terms of this Agreement. The decision of the Arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties within the scope of the Arbitrator's authority.'

"The District argues that the arbitrator exceeded his authority, because the District at no time 'agree[d] to include substitute or temporary teachers in the collective bargaining unit and thus grant them the protection of the grievance clause.' This begs the question of whether these teachers were substitutes or regular teachers. More important, this argument goes directly to the merits of the dispute, *i.e.*, the parties' intentions in writing the contract. All that the District is saying is that the arbitrator exceeded his authority because, by adding an obligation, he was wrong in his interpretation of the contract. Whether the arbitrator correctly interpreted the contract is the very question that neither ERB nor this court

---

[2] It is well established that, when the contract so provides, the meaning of an arbitrability provision is a question for the arbitrator. *See Portland Assn. of Teachers v. School Dist. No. 1,* 51 Or App 321, 327, 625 P2d 1336 (1981). The contract here expressly provides that the arbitrator is to decide "question[s] of arbitrability or grievability." District argues that *Portland Assn. of Teachers, supra* allows arbitrators to interpret arbitrability provisions only if they are ambiguous. Even assuming District's understanding to be correct, the grievance and arbitration provisions of the agreement are ambiguous in the context of these facts: They expressly permit grievances pertaining to procedural requirements of evaluations and they expressly forbid grievances relating to dismissal proceedings. This case involves both a dismissal and related violations of evaluations procedures.

can consider on review. *Eugene Educ. Assoc. v. Eugene School Dist. 4J, supra.*" 60 Or App at 636.

◼  Nothing we said in *Willamina* suggests that the scope of ERB's review of an arbitrator's interpretation of the arbitration provision of an agreement differs from its scope of review of any other interpretation by an arbitrator, and the quoted passage from our opinion is to the effect that an arbitrator's interpretation of contractual provisions affecting her authority is subject to the same very limited review as the arbitrator's interpretation of other contractual provisions.

ERB's opinion on reconsideration states that, "if an arbitrator clearly exceeds his authority his 'award would not be an award that the parties had agreed to make final and binding upon them'" (quoting from ERB's decision in *Willamina,* 5 PECBR at 4099). It is true, as ERB suggests, that a party may be dissatisfied with an arbitrator's erroneous decision that a contract makes a particular matter arbitrable that the party does not want to submit to arbitration; it is equally evident that a party would be unhappy with an arbitrator's adverse misinterpretation of any other contractual provision that affects the party's rights. However, in both instances, the party has agreed that the interpretation is for the arbitrator to make. We see no reason why the arbitrator's decision should be subject to different standards of review in the two contexts.

◼◼  District argues that ERB must make a determination totally independent of the arbitrator's about whether the arbitrator has contractual authority to decide an issue, because ERB has sole authority under ORS 243.650 *et seq* to decide whether an unfair labor practice has occurred and that authority cannot be delegated to an arbitrator. The premise is correct, but the conclusion is not. It is true that only ERB can *declare* an unfair labor practice complaint to be well-founded; it is not correct that nothing can *be* an unfair labor practice unless ERB is directly involved in it. The unfair labor practice alleged here is that Distict failed to comply with an *arbitrator's* award by which it agreed to be bound. It is circular to argue, as District in effect does, that ERB must agree with the arbitrator's decision in order for it to hold that District violated the statute that requires it to comply with her decision.

District also argues that, if ERB's decision cannot be sustained on the grounds it addressed, there are alternative bases for affirming the dismissal of the complaint. Association contends that ERB should consider those alternative reasons initially on remand. We agree with Association generally, but two of District's alternative arguments must be resolved now as a conjunct to our decision of its cross-petition.

■ District assigns error under the cross-petition to ERB's exclusion of a portion of the FDAB transcript in the dismissal proceeding. It contends that that evidence should have been admitted to show that the issues raised in Pecka's grievance were considered in the FDAB proceeding on the dismissal. The alternative grounds that District advances for affirming ERB that are germane to its cross-petition are (1) that the arbitrator's reinstatement of Pecka violates public policy, because it is inconsistent with the Fair Dismissal Law (ORS 342.805 *et seq*) and with FDAB's affirmance of the dismissal, and (2) that Pecka is barred by *res judicata* or collateral estoppel from raising issues in his grievance that were raised in the FDAB proceeding. We held in *N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn.,* 54 Or App 211, 634 P2d 1348 (1981), and *Central Point Sch. Dist. v. ERB,* 27 Or App 285, 555 P2d 1269, *rev den* 277 Or 491 (1977), that there is no conflict between the statutory responsibilities of a school district over renewal of a probationary teacher's contract and provisions in the district's collective bargaining agreement for the arbitration of renewal-related matters, including evaluations. *But see Ostrer v. Pine-Eagle School Dist.,* 40 Or App 265, 594 P2d 1296 (1979). For essentially identical reasons, we conclude that there is no conflict between the arbitration provision here and the Fair Dismissal Law, and we therefore conclude that the contract does not offend public policy.

■ We also conclude that the FDAB proceeding does not have a *res judicata* or collateral estoppel effect on the grievance and arbitration proceedings. The FDAB proceeding was an appeal from the dismissal taken pursuant to statutes that are concerned exclusively with teacher dismissals; the grievance and arbitration proceedings were contractual remedies for the District's asserted non-compliance with its evaluation procedures. Although there may be a factual connection between the evaluation problems and the dismissal here, there is no required connection between the two forums or between

the remedial purposes they serve. We decline to hold that *res judicata* or collateral estoppel principles are applicable here. *See Shannon v. Moffett,* 43 Or App 723, 604 P2d 407 (1979), *rev den* 288 Or 701 (1980). It follows that the exclusion of the evidence was proper.

Reversed and remanded for reconsideration of the arbitrability issue and for further appropriate proceedings on the petition; affirmed on the cross-petition.[3]

---

[3] In view of our holding, we need not and do not consider the arbitrator's remedy or her disposition of the merits. *See N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn., supra,* 54 Or App at 223-25. Our holding on the petition pertains only to the arbitrability issue.

District contends that Association has not satisfied applicable requirements for specifying the statutory basis on which it seeks reversal of the order. That contention is unmeritorious.