Argued and submitted April 22, affirmed June 12, 1996

# CHENOWITH EDUCATION ASSOCIATION,
*Petitioner,*

*v.*

# CHENOWITH SCHOOL DISTRICT 9,
*Respondent.*

(UP-104-94; CA A89712)

918 P2d 854

Monica A. Smith argued the cause for petitioner. With her on the brief was Smith, Gamson, Diamond & Olney.

Nancy Hungerford argued the cause for respondent. With her on the brief was Bischof, Hungerford & Whitty.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

The Chenowith Education Association (Association) seeks review of an Order of the Employment Relations Board (ERB) dismissing its complaint against the Chenowith School District (District) for unfair labor practices. We review ERB's order pursuant to ORS 183.482(8), and affirm.

Association and District were parties to a collective bargaining agreement for the period of July 1, 1993, to June 30, 1995. That agreement contains provisions related to the preparation time allotted to teachers employed by District. Paragraph 17C of the agreement provides:

"C. A preparation Time Study Committee shall be established to evaluate preparation time issues for K-5 teachers, and relieve any excessive workload situations. The committee shall be composed of four members appointed by the District, including a parent and four members of the Association including a parent. Decisions of the committee shall be by majority rule of the members of the committee. Any decision of the committee regarding preparation time shall be incorporated into this Agreement. The committee shall complete its work by March 1, 1994."

Pursuant to the agreement, a committee was established consisting of four members appointed by Association and four members appointed by District. After the committee began meeting, only Association made a proposal under Paragraph 17C. Before a vote was taken, District made a substitution for one of its members. After the substitution was made, the vote was four to four and, as a result, the language proposed by Association was not incorporated into the agreement.

Association filed a grievance alleging District had violated the agreement because it had failed to make a proposal. Association also asked the arbitrator to fashion an appropriate remedy for the violation. The parties selected an arbitrator, and a hearing was held in September 1994. The arbitrator sustained the grievance, finding that District violated the agreement by failing to fulfill its obligation to propose how to resolve the preparation time issue. As a remedy for the violation, the arbitrator concluded that the proposal

previously made by Association would be incorporated into the agreement and would bind District.[1]

District refused to implement the arbitrator's decision. In response, Association filed an unfair labor practice complaint with ERB, alleging that District's refusal violated ORS 243.672(1)(g).[2] District moved to dismiss the complaint on the ground that the arbitrator had exceeded an express limitation of his authority as set forth in Paragraph 5C4d of the agreement:

"The decision of the arbitrator within his/her authority, shall be binding on all parties officially involved, except that the arbitrator shall have no authority to add to, subtract from, modify or amend any terms of this Agreement."

ERB agreed with District's argument and dismissed Association's complaint. It ruled in part:

"Although there are a number of ways the arbitrator could have imposed such a remedy without exceeding his authority, his conclusions about the merits of the case—which are not subject to a right/wrong review by this Board—preclude the remedy he chose.

"* * * * *

"[A]lthough he found that the committee did not reach agreement, the arbitrator nevertheless imposed an agreement upon them. The arbitrator's remedy created a completely new and unbargained-for contract obligation. The contract's limitation on arbitrator authority expressly forbids modification of the agreement and therefore forbids such a remedy.

---

[1] Association's proposal provided:

"CES K-3, Teachers will receive two 30-minute planning periods within student contact time based on the current school day which runs 8:15 to 2:15; CES 4-5, Teachers receive five 30-minute planning periods, one each day, within student contact time. This is based on the current student day which runs from 8:15 to 2:40."

[2] ORS 243.672(1)(g) provides that it is an unfair labor practice for a public employer to

"[v]iolate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them."

"[The arbitrator] affirmatively found that no agreement was reached, and then, without explanation, awarded one of his own choosing. The arbitrator was limited under the contract to 'rights' arbitration, that is, he was confined to adjudicating the parties' rights under *existing* contract language. He was forbidden from engaging in 'interest' arbitration, a limitation which he exceeded by ordering the parties to adopt what the arbitrator himself found to be an unbargained-for and unagreed-upon contract provision." (Emphasis in original.)

On review, both parties agree that ERB identified the correct standard of law as set forth in *Willamina Sch. Dist. v. Willamina Ed. Assn.*, 60 Or App 629, 655 P2d 189 (1982). However, Association contends that ERB erred by failing to implement the arbitrator's remedy. In *Willamina*, we concluded that ERB's adoption of a policy that it would enforce arbitration awards unless an arbitrator exceeds a limitation of authority expressly provided for in the collective bargaining agreement was consistent with the policies of ORS 243.650 to 243.782. We restated our holding in *Beaverton Ed. Assn v. Wash. Co. Sch. Dist. No. 48*, 76 Or App 129, 137, 708 P2d 633 (1985), *rev den* 300 Or 545 (1986):

"The *Willamina* test circumscribes ERB's scope of review in cases involving *contractual interpretation* by arbitrators. [Emphasis supplied.] It is true that the test creates an exception to the general rule of enforceability when 'an arbitrator exceeds a *limitation* on his authority *expressly provided* in the collective bargaining agreement.' " (Emphasis in original.)

The heart of this dispute is not about whether District was required to make a proposal under the terms of the agreement but whether the arbitrator exceeded his authority to fashion a remedy under the agreement for the violations. The only provision in the collective bargaining agreement that specifically relates to the authority of the arbitrator to impose remedies precludes the arbitrator from adding to, subtracting from, amending or modifying the terms of the agreement. The language limiting the authority of the arbitrator in this regard is not meaningless and must be given effect.

■ We have previously held that once a violation of the collective bargaining agreement is established, the arbitrator has authority to formulate an appropriate remedy. *See Corvallis Sch. Dist. v. Corvallis Education Assn.*, 35 Or App 531, 581 P2d 972 (1978). However, we have also recognized that an arbitrator's authority in fashioning a remedy is not limitless. *See Eugene Educ. Assoc. v. Eugene School Dist. 4J.*, 58 Or App 140, 648 P2d 60, *rev den* 291 Or 9 (1982) (holding that, because the arbitrator ruled that there was no violation of the collective bargaining agreement, he acted beyond his authority in ordering a remedy); *N. Clackamas Sch. Dist. v. N. Clackamas Educ. Assn.*, 54 Or App 211, 223, 634 P2d 1348 (1981) (upholding the remedy of the arbitrator but restricting its effect so that it did not conflict with the school district's statutory duties or with the collective bargaining agreement).

■ Other jurisdictions have interpreted similar language in collective bargaining agreements regarding this issue, and their decisions are instructive. For instance, in *Leed Architectural Products v. Local 6674*, 916 F2d 63 (2d Cir 1990), the court discussed the import of a clause that said "the arbitrator had no authority to add to, subtract from or in any way modify its terms, and that the decision of the arbitrator should be final and binding." *Id.* at 64. In holding that the arbitrator exceeded his authority because of the remedy he imposed, the court concluded:

" '[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' * * *

"This great deference, however is not the equivalent of a grant of limitless power. * * * An arbitrator's authority to settle disputes under a collective bargaining agreement is contractual in nature, and is limited to the powers that the agreement confers. * * * He may not shield an 'outlandish disposition of a grievance' from judicial review 'simply by making the right noises—noises of contract interpretation.' * * * Likewise, he may not 'dispense his own brand of industrial justice.' * * *

"This rule applies not only to the arbitrator's substantive findings, but also to his choice of remedies. 'He may not

impose a remedy which directly contradicts the express language of the collective bargaining agreement.' \* \* \*

" 'An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement.' \* \* \* He is 'confined to interpretation and application of the collective-bargaining agreement; he does not sit to dispense his own brand of industrial justice.' \* \* \* *The 'zipper clause' in Leed's collective bargaining agreement which denies the arbitrator the right to 'add to, subtract from or any way modify' its terms, is a pragmatic restatement of the above holdings. Its purpose is 'to make the written contract the exclusive statement of the parties' rights and obligations. ' " Id.* at 65-67. (Citations omitted; emphasis supplied.)[3]

■■ In this case, the agreement requires that decisions regarding preparation time "shall be by majority rule of the members of the committee" and that "any decision of the committee regarding preparation time shall be incorporated into this Agreement." The arbitrator found that the parties did not agree to the language proposed by Association. Nevertheless, he ordered the proposal incorporated into the agreement, thereby in effect adding a new, unagreed-to provision to the agreement. For that reason, his order exceeds the authority granted to him by the agreement. He was not authorized to make a new agreement for the parties under the guise of interpreting an existing agreement. ERB acted properly when it dismissed Association's complaint after concluding that the arbitrator exceeded the collective bargaining agreement's limitation on his authority by adding to and modifying the existing agreement.

Affirmed.[4]

---

[3] Other cases have interpreted similar collective bargaining agreement provisions and have reached the same conclusion. *See Local 1837, Intern. Broth. v. Maine Public Service Co.*, 579 F. Supp 744 (1984); *IBEW, Local 429 v. Toshiba America, Inc.*, 879 F2d 208 (6th Cir 1989); *JNESO v. Roxbury Med. Group*, 868 F2d 88 (3rd Cir 1989).

[4] Our opinion should not be interpreted as a departure from the standard of review that we established in *Willamina*. We recognize that an arbitrator's interpretation of a collective bargaining agreement is not reviewed under a "right/wrong" analysis. Here, the arbitrator specifically found that the committee did not reach agreement on the provision that he imposed on the parties. As a result, the arbitrator's remedy created a new and unbargained-for contract obligation. In contrast, *Willamina* is an example of a case in which the arbitrator's interpretation clarified an already existing provision of the agreement. In substance, the arbitrator in that case was carrying out the intentions of the parties. That is not the case here.