Argued and submitted February 5, affirmed December 10, 2014

PORTLAND FIRE FIGHTERS' ASSOCIATION,
*Respondent,*

*v.*

CITY OF PORTLAND,
*Petitioner.*

Employment Relations Board
UP1310; A150768

341 P3d 770

Harry Auerbach argued the cause and filed the briefs for petitioner.

Barbara J. Diamond argued the cause and filed the brief for respondent. With her on the brief was Diamond Law.

Before Ortega, Presiding Judge, and DeVore, Judge, and Schuman, Senior Judge.

DEVORE, J.

**DEVORE, J.**

Petitioner City of Portland (city) seeks judicial review of an order of the Employment Relations Board (ERB) that declared that the city committed an unfair labor practice (ULP) by failing to accept the terms of an arbitration award. In an earlier proceeding, an arbitrator had determined that, without just cause, the city had discharged a disabled firefighter on injury leave. In order to make him whole, the arbitrator had ordered the city to reinstate him to leave status and to pay him the equivalent of the disability benefits that he had lost some months before the discharge. Although the city reinstated him, it refused to pay the sum equivalent to lost disability benefits. On his behalf, the Portland Fire Fighters' Association (association) filed a ULP complaint against the city for failing to comply with an arbitration award. ORS 243.672(1)(g).[1] The city contends that, in the earlier proceeding, the arbitrator had exceeded the scope of his authority to arbitrate. ERB found otherwise and ordered compliance. The city seeks review of that order. We affirm.

## I.  BACKGROUND

The facts are largely undisputed but layered in proceedings. Tom Hurley is a former city firefighter who injured his knee in 1983 and his back in 1992. Since 1993 or 1994, he had been on disability status and receiving disability benefits from the city's Fire and Police Disability and Retirement Fund (fund). Hurley received training through the fund's vocational rehabilitation program to become a chef. His wages in that occupation have the effect of reducing disability benefits, but benefits can be reduced no lower than a minimum of 25 percent of his base rate of pay at the time of disability.

---

[1] ORS 243.672(1) provides, in relevant part,

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g)  Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept arbitration awards as final and binding upon them."

In 2006, the city implemented a return-to-work program, which required certain injured fund members to resume work in restricted-duty positions. Hurley was notified that he was a potential participant in the program. The city directed him to attend a mandatory five-week training session beginning in November 2006. He was told that, if he failed to attend training, the fund would suspend or terminate his disability benefits. He did not attend the training because it conflicted with his duties as a chef at restaurants in Seattle and Portland. In December, the fund sent Hurley a letter asking him to explain his absence. In response, Hurley's attorney asserted, among other things, that, after vocational rehabilitation, a disabled firefighter should not be required to retrain for a restricted-duty job. Although the city conceded Hurley's scheduling conflicts, the city still asked him to reschedule training by March 9, 2007. The city followed with a notice directing Hurley to report for work as an inspector on April 5, 2007. Hurley did not reschedule training, and he did not report for work in the restricted-duty job.

On April 13, 2007, the fund notified Hurley that it terminated his disability benefits because he had failed to attend training. The fund advised Hurley that he had 14 days to respond and 60 days to appeal the decision within the fund's administrative process.[2] His attorney responded, asking for reconsideration of the benefit termination, but the fund did not reply or reconsider. Hurley did not pursue the administrative appeal.

Coincidentally, on April 25, 2007, the association filed a separate ULP complaint with ERB regarding the city's implementation of the return-to-work program. Although Hurley was not involved in that proceeding, the complaint concerned the same program that sought to retrain and reassign him. The association charged, among other things, that the city unilaterally implemented the program while refusing to engage in mandatory bargaining over the program's impacts.

---

[2] The response and appeal deadlines relate to the fund's administrative procedures, not to grievance procedures within the collective bargaining agreement.

On April 26, 2007, the city again directed Hurley to report for work as an inspector, setting a date in May 2007, and warning that his failure to report would be deemed an abandonment of his job and a reason to terminate his disabled employment status. In June 2007, the city notified Hurley that it was proposing to discharge him, and on October 7, 2007, the city discharged him for abandoning his job since April 5.

The association challenged Hurley's discharge by filing a grievance pursuant to the parties' collective bargaining agreement (CBA).[3] The association alleged that the discharge lacked just cause. As remedies, the association sought rescission of Hurley's discharge and "reinstatement to status as [a] disabled employee *receiving benefits through FPD&R [Fund]*." (Emphasis added.) The parties submitted the dispute to arbitration. After conferring, the arbitrator recorded that the parties agreed that the two arbitration issues were:

"Did the City have just cause to terminate Grievant under the City's 'return-to-work program' in light of the ERB's ruling in Case No. UP-14-07?

"*If so, does the arbitrator have authority to issue the remedy sought by the Association?*"

(Emphasis added.) At that time, the thrust of the city's argument was that the arbitrator lacked authority over benefits because (a) the fund had exclusive authority over benefits, (b) by reason of city charter and the city's home rule status, the fund was not subject to the CBA or the Public Employee Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, and (c) Hurley had failed to pursue an appeal within the fund's administrative process.

The city was making a similar argument about the nature of the fund in its defense against the separate ULP complaint about the return-to-work program. Its defense presented a similar question about the independence of the program or fund from duties under labor law. At the city's

---

[3] The grievance procedure is a multi-step process detailed in Article 14 of the CBA. It begins with a grievance submitted to a supervisor, proceeds through the fire chief, and ends with arbitration.

request, the Hurley arbitration was postponed until ERB ruled on that ULP complaint.

In that separate proceeding, ERB answered the question about the independence of the program, ruling that the duty to bargain did extend to the fund's benefits and the city's return-to-work program. ERB explained:

> "The [fund] is, in fact, a creation of the City. The [fund], the Fire Bureau, the Police Bureau, and the Bureau of Human Resources are all departments within the City, created by the City, funded by the City, staffed in accordance with City policies, and advised by the City Attorney's Office. The City Fire Bureau, the [fund], and Human Resources department worked together to implement the return-to-work program. In effect, the Fire Bureau and the [fund] are two parts of the City's governmental structure."

ERB concluded that the city had unlawfully implemented the return-to-work program because, in a number of ways, the city failed to give notice and to bargain the program's impacts that are subject to mandatory bargaining. The city sought judicial review of ERB's decision. Although our opinion did not issue in time for the Hurley arbitration, we rejected without discussion the city's argument that the city's structure meant that the duties of collective bargaining did not extend to the fund's disability benefits or the return-to-work program. *Portland Fire Fighters' Assoc. v. City of Portland*, 245 Or App 255, 263 n 3, 263 P3d 1041 (2011).[4]

Meanwhile in Hurley's case, the arbitrator proceeded with the arbitration based on ERB's decision about the ULP complaint against the city's return-to-work program. On the first submitted issue, the arbitrator concluded that Hurley was discharged without just cause, because both the fund's order to report for training and the city's order to report for work were unlawful and unreasonable orders designed to implement the return-to-work program prior to the required bargaining about the program's impacts. The

---

[4] We reversed and remanded on other grounds, directing ERB to determine whether the CBA authorized the city to unilaterally affect mandatory subjects of bargaining in the manner that it did. *Portland Fire Fighters' Assoc.*, 245 Or App at 263. After remand, the association withdrew the ULP complaint, and ERB rendered no ultimate decision.

arbitrator turned to the second submitted issue, the city's challenge to the arbitrator's authority to restore disability benefits provided through the fund. The arbitrator recited ERB's finding that the fund was, in truth, a part of "the City's governmental structure" for purposes of collective bargaining. The arbitrator acknowledged that the CBA did not "specifically confer jurisdiction over the Fund" on him. Nevertheless, the arbitrator found that the CBA did confer general authority on an arbitrator to provide a "make-whole" remedy for unlawful orders even when the remedy is not specifically expressed. The arbitrator explained:

> "An arbitrator's source of authority is the labor agreement. As is typical in nearly all labor agreements, the parties' CBA does not contain any provision detailing what remedy should be applied as compensation for a particular violation. However, the absence of an explicit jurisdictional grant to fashion a remedy does not deny the existence of an implicit grant of remedial powers. Both the courts and arbitrators have established that if the arbitrator has jurisdiction of the subject matter, he or she has implicit power to fashion an appropriate remedy sufficiently grounded in the contract. Hill and Sinicropi, *Remedies in Arbitration* (BNA 2nd ed., 1991) at 48."

The arbitrator reasoned that, "but for the City's unlawful and unreasonable orders, the Fund would not have had grounds to terminate [Hurley's] disability benefits." He concluded that a make-whole remedy required restoration to the *status quo* before the orders were issued and that that outcome included compensation for the lost disability benefits. Because the city had raised doubts about his jurisdiction over the fund, the arbitrator ordered that the city—over which he did unquestionably have authority—to compensate Hurley for those benefits, unless and until the fund assumed that responsibility.[5]

---

[5] The arbitrator determined that

"the simplest way to make [Hurley] whole is for me to direct the City to reinstate [Hurley] as a Fund member ***. However, the City has taken the position that no one, including the City, has the authority to direct the Fund to do anything.

"Accordingly, I direct the City (not the Fund) to pay [Hurley] the amount of compensation [he] would have received *** had those benefits not been terminated by the Fund."

In reaction, the city council adopted a resolution that refused to implement the arbitrator's award.[6] The city continued to deny Hurley disability benefits. The association filed a ULP complaint with ERB for the city's refusal to comply with the award. Before ERB, the city asserted, among other things, that the arbitrator had exceeded his authority in awarding a sum equivalent to lost disability benefits. The city argued that the fund was an entity separate from the city, Hurley had not pursued an administrative appeal within the fund, his subsequent discharge was unrelated to disability benefits, and, therefore, the city had not agreed that benefits could be arbitrated.[7] Although the city believed that Hurley was not allowed to arbitrate his loss of disability benefits under the CBA, the city added that the 14-day grievance deadline in the CBA represented a limit on the arbitrator's authority, which was implicitly violated when the benefit cut in April was belatedly remedied.

ERB's decision began with a description of its limited role in reviewing an arbitration award. Paraphrasing its precedents, ERB recounted that it will enforce an arbitration award unless it is clearly shown that

"(1)   the parties did not agree to accept such an award as final and binding upon them (*i.e.*, an arbitrator finds no violation of the agreement, but upholds a grievance as constituting an unfair labor practice; an arbitrator exceeds a limitation on his authority expressly provided in the collective bargaining agreement); or

"(2)   enforcement of the award would be contrary to public policy (*i.e.*, the award requires commission of an unlawful act; the arbitration proceedings * * * did not conform to normal due process requirements)."

---

[6] The city council resolution directed "that the decision of the arbitrator regarding former-firefighter Hurley shall not be implemented in order to move the union's grievance forward to a court for final determination." Council member Randy Leonard disagreed, predicting, "This arbitration award will not be overturned."

[7] As part of an affirmative defense challenging the arbitrator's authority on benefits, the city alleged that, under the CBA, the "union *could not* and did not grieve either the directive to attend training or the order terminating Hurley's benefits." (Emphasis added.) The city's position before ERB presumably was that the association *could not* file a labor grievance over disability benefits insofar as the fund's internal appeal was "exclusive" and the benefit loss was final insofar as it had not been pursued through the fund.

ERB explained, "So long as an arbitrator's award is based on the arbitrator's interpretation of the contract language, the arbitrator is within his or her authority and the parties are bound by the decision." The board will not engage in "right/wrong analysis" of an arbitrator's award and will enforce the award even if the arbitrator made a mistake of fact or law. ERB noted that "[t]he remedial power of an arbitrator encompasses any relief which the arbitrator finds is reasonably necessary to remedy a contract violation, provided that the remedy does not graft additional language to the contract." A make-whole remedy was appropriate for a discharge without cause. Finding that the arbitrator did not exceed his authority, ERB ordered the city to comply with the award.

## II.  DISCUSSION

### A.  *Judicial Review*

The city seeks judicial review, recasting its arguments. The city argues that the grievance procedure is the exclusive remedy for disputes under the CBA; that a grievance under the CBA must be filed within 14 days; that Hurley did not grieve the order to report for training nor arguably the loss of disability benefits; that any remedy involving benefits should be time-barred; that the city agreed to arbitrate his discharge but not his loss of benefits; and, therefore, the arbitrator had no authority to evaluate the order for training or to give a remedy for a late grievance. The city has abandoned its earlier arguments that the award was contrary to public policy.[8]

We review ERB's order for legal error, substantial reason, and substantial evidence. ORS 183.482(8)(a), (c); *Portland Fire Fighters' Assoc.*, 245 Or App at 257. We have previously approved ERB's policy, recited above, which enforces arbitration decisions unless the parties did not agree to binding arbitration or the award is contrary to public policy. *Willamina Sch. Dist. 30J v. Willamina Ed. Assn.*,

---

[8] Before ERB, the city argued that the award violated public policy, because, among other things, Chapter 5 of the Portland City Charter created the fund as an independently governed entity, the Oregon Constitution allows local home rule governments to do such things, and, by disregarding the fund's nature or process, the award violates the city charter or Oregon Constitution.

60 Or App 629, 635, 655 P2d 189 (1982) (*Willamina*).[9] Given that limited review, the reviewing body, whether ERB or the courts, will not critique the arbitrator's interpretation of the parties' contract or review the merits of an arbitration award. We will not second-guess whether the arbitrator is right or wrong on the disputed issues presented in arbitration. *Id.* at 636; *see also Eugene Educ. Assoc. v. Eugene School Dist. 4J*, 58 Or App 140, 153, 648 P2d 60 (1982). Our deference extends to the arbitrator's interpretation of the labor agreement regarding the arbitrator's authority. A party may be dissatisfied with an arbitrator's decision on the facts, a misapplication of the contract, or a misinterpretation whether a matter is arbitrable. Nevertheless, our standard of review is the same in each instance: Those decisions are the arbitrator's alone to make. *Beaverton Ed. Assn v. Wash. Co. Sch. Dist. No. 48*, 76 Or App 129, 139, 708 P2d 633 (1985), *rev den*, 300 Or 545 (1986).[10]

The city's arguments all address the issue whether the parties "agree[d] to accept such an award as final and binding upon them." To resolve the issue, we consider two possibilities as the source for a negative answer—one circumstantial, one textual. We first look to the way in which the contract, parties, and proceedings framed the issues, and, as explained below, we next look to determine whether the arbitrator's decision exceeded an express limitation on

---

[9] This limited review of arbitration awards is consistent with the principal purpose of arbitration, which is to avoid litigation. *Brewer v. Allstate Insurance Co.*, 248 Or 558, 562, 436 P2d 547 (1968) ("[W]e favor the view that confines judicial review to the strictest possible limits."). It is also consistent with the PECBA, which favors finality of arbitration awards. *Willamina*, 60 Or App at 635.

[10] In *Beaverton Ed. Assn*, we concluded:

"We do not agree * * * that the *Willamina* test requires a broader scope of administrative or judicial review of arbitrators' interpretations of arbitrability provisions than their interpretations of any other contractual language. The *Willamina* test circumscribes ERB's scope of review in cases involving contractual interpretation by arbitrators. It is true that the test creates an exception to the general rule of enforceability when 'an arbitrator exceeds a *limitation* on his authority *expressly provided* in the collective bargaining agreement.' (Emphais supplied.) That does not mean, when there is no such express limitation in an arbitrability provision, that the interpretation of that provision is any less subject than other provisions to the arbitrator's authority or any more subject to ERB's review."

76 Or App at 137-38 (footnote omitted).

his authority. We take those possibilities in turn. As to each, there is no justification to refuse to enforce this arbitrator's award.

## B.  *Agreement to Arbitrate*

The CBA swept broadly when its grievance provision declared that "both parties pledge their immediate cooperation to settle *any* grievance or complaints that might arise out of the application of this Agreement * * *." (Emphasis added.) In a concurring opinion, ERB member Gamson aptly observed:

> "An arbitration provision in a contract is not self-executing. The parties must in some fashion define the issue before the arbitrator. That typically occurs through the provisions of the contract, the grievance, and any stipulation or submission to the arbitrator. *See Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F2d 580, 584 (5th Cir 1980) (court looks to collective bargaining agreement and submission to determine arbitrator's authority)[.]"

Hurley's grievance form specifically sought "[r]escission of dismissal; reinstatement to status as disabled employee *receiving benefits through FPD&R [Fund].*" (Emphasis added.) The arbitrator conferred with the parties on the issues to be arbitrated, and they agreed that, if the city lacked just cause to terminate Hurley from his leave status, then the arbitrator would decide the next question, "[D]oes the arbitrator have authority to issue the remedy sought by the Association?" Thus framed, the arbitrator interpreted the "remedy sought" to be a restoration of disability benefits, if not through the fund itself, then as a matter of providing a make-whole remedy for a discharge without just cause.[11]

Whether or not the city might have contrary arguments—ranging from Hurley's failure to pursue an administrative appeal to his arguable delay in filing a grievance about his benefit loss—the discharge and the benefit

---

[11] The arbitrator wrote, "The remedy sought by the Association is recission of Grievant's discharge and 'reinstatement to status as disabled employee receiving benefits through the Fund.' *I find this remedy is in the nature of a 'make-whole' remedy which is typical in labor arbitrations.*" (Emphasis added.)

loss were made arbitrable issues.[12] Although the city may believe that the arbitrator is wrong to regard the training and work orders as interrelated aspects of the challenged return-to-work program or wrong to regard benefits lost in April as related to the discharge in October, those findings or conclusions are ordinary issues of "right and wrong" involving the merits of the grievance before the arbitrator. Such determinations are not beyond the arbitrator's authority. The discharge, its predicate events, and its consequences were all made arbitrable by the question about just cause. A remedy for discharge was made arbitrable by the need for a "make-whole" remedy for an unjustified discharge as well as a specific question about how to compensate for lost benefits. The specificity of the remedy question—did the arbitrator have authority to restore benefits through the fund—did not limit his authority to fashion a make-whole remedy. More about a "make-whole" remedy remains to be said below. It suffices here to conclude that the parties agreed to arbitrate the discharge and whatever remedy should follow.

The city urges a contrary conclusion by drawing a faulty analogy. In *Deschutes Cty. Sheriff's Assn. v. Deschutes Cty.*, 169 Or App 445, 450, 9 P3d 742 (2000), *rev den*, 322 Or 137 (2001) (*Deschutes County*), an arbitrator had found no just cause to discipline an officer for vicarious responsibility for excessive force. The arbitrator had refused to uphold discipline for other misconduct that had not been given originally as reasons for discipline.[13] By analogy, the city contends that the arbitrator here "lacked authority" to provide

---

[12] With the same facts and an analogous issue, the Supreme Court recently held that the doctrine involving a failure to purse administrative remedies would not be invoked to preclude a Portland firefighter's claim for breach of contract. Olson, a disabled firefighter, like Hurley, had responded to the fund's benefit termination, had received no reply from the fund, and similarly failed to file an administrative appeal. *Miller v. City of Portland*, 356 Or 402, 338 P3d 685 (2014). In the context of Hurley's grievance, such an issue is one for the arbitrator about the merits, not a matter for us about the arbitrator's authority.

[13] The county had disciplined an officer for vicarious responsibility for another officer's excessive force with a jail prisoner. ERB refused to enforce the arbitration that favored the officer, on the ground that it would relieve a public employee of misconduct in violation of public policy requirements. ORS 243.706(1). We reversed ERB, explaining that ERB misapplied the statute, that the arbitrator had found the officer *not* guilty of the misconduct originally charged, and that the arbitrator had merely observed that the officer had not been disciplined for other alleged misconduct. *Deschutes County*, 169 Or App at 455.

a remedy for a benefit loss because the order to retrain had not been grieved in April or mentioned specifically in the grievance in October.

The fault in the analogy is fundamental. In *Deschutes County*, the arbitrator's distinction between charged and uncharged misconduct was his approach to the merits of just cause, based on his reading of the labor agreement and principles of discipline in labor laws. *Id.* at 450. His framework for the merits was part of his arbitration decision, and, as such, it was what arbitrators are privileged to determine. His approach to the merits did not represent the boundaries of his authority, insofar as the parties had generally agreed to arbitrate discipline and just cause. That arbitrator's approach to the merits of that case does not represent a template by which ERB or a court could assess here whether the arbitrator had exceeded his or her authority to arbitrate.

*Deschutes County* does contain a salient point. When ERB refused to enforce the arbitrator's decision, we reversed. We explained:

> "It does not matter if the County, ERB, or this court agrees with [the arbitrator's] determination. The point is that the County agreed to resolve labor disputes through binding arbitration, and, subject to certain limitations that do not apply here, it must accept the outcome."

*Id.* at 455 (citation omitted). The same can be said here. Given the breadth of the CBA's provision on grievances, given a grievance that asked restoration of benefits, and given that the parties asked the arbitrator about remedies, the parties had agreed to resolve this dispute through binding arbitration.

C.  *Textual Limit on Authority*

In a different sense, a party has not agreed to arbitrate a matter where the "arbitrator exceeds a limitation on his authority expressly provided in the collective bargaining agreement." *Willamina*, 60 Or App at 633. An example provides some perspective. We considered an express limitation on an arbitrator's authority in *Chenowith Ed. Assn. v. Chenowith School Dist. 9*, 141 Or App 422, 918 P2d 854

(1996). In that case, the labor agreement established a joint committee of teachers and administrators who would consider proposals for teacher preparation time. By majority vote, the committee would adopt a proposal to be added as new text to the labor contract. The teachers' association submitted a proposal, but the district did not. The association's proposal was not adopted, and nothing was added to the contract. The association filed a grievance. The labor contract contained a provision for grievances that expressly proscribed the arbitrator's authority to "add to, subtract from, modify or amend any terms of this Agreement." *Id.* at 425. The arbitrator found that the district's failure to submit a proposal violated the labor agreement, and he ordered that the proposal offered by the association be incorporated into the labor agreement. *Id.* at 423-24. The district refused to implement the decision. The association filed a ULP complaint with ERB to enforce the decision. ERB agreed with the school district. ERB found that the arbitrator's award "created a completely new and unbargained-for contract obligation." *Id.* at 424. It dismissed the ULP complaint, and we affirmed. Contrary to the express limitation in the contract, the arbitrator had added to the parties' agreement— something that could only be added by the committee. In so doing, the arbitrator had exceeded an express limitation in the parties' agreement. *Id.* at 428.

In this case, the city has argued that the CBA requires that a grievance identify a contract provision that is breached and how it is breached and that a grievance should be filed within 14 days of the breach. Because, the city contends, Hurley did not reference the training order or file within 14 days of the benefit loss, the arbitrator had no power over the issue. The city contends that, with nothing more specific than this grievance, the terms of the contract limited the arbitrator to the question of discharge and foreclosed consideration of any remedy beyond reinstatement. If strictly enforced by the arbitrator as the city would urge, those procedural terms of the contract may limit the grievant's relief. Or, they might suggest, at least in the city's view, that the arbitrator was wrong in disregarding such procedural standards. But those procedures do not constrain the arbitrator's authority. They do not inhibit the arbitrator's

response to the discharge or to the request for restoration of disability benefits.

The city stresses that the arbitrator recognized that the CBA did not "specifically confer any jurisdiction over the Fund." Yet, the city offers no contract text to prohibit the arbitrator from providing a make-whole remedy that requires the city to provide equivalent benefits. To question a "make-whole" remedy, the city cites the language of grievance procedure—that "the arbitrator shall have no power to alter in any way the terms of this agreement" and that the "decision of the arbitrator shall be within the scope and terms of this agreement * * *." None of that language, however, is contravened in requiring the city to pay the equivalent of lost disability benefits. Neither of those clauses expressly limits the arbitrator's general remedial authority under a labor agreement. Contrary to the city's view, that general language in the grievance provision did not provide a textual limit on the arbitrator's authority.

D. *A Make-Whole Remedy*

We will not quarrel with the arbitrator's interpretation of the contract that provides him authority for a "make-whole" remedy. As we stated in *Willamina*, "[w]hether the arbitrator correctly interpreted the contract is the very question that neither ERB nor this court can consider on review." 60 Or App at 636 (citing *Eugene Educ. Assoc.*, 58 Or App at 151). That same standard applies to interpretations of the contract provisions affecting the arbitrator's authority. *Beaverton Ed. Assn*, 76 Or App at 139. We have made much the same observation as did the arbitrator when we adopted the views expressed by the United States Supreme Court on the *Steelworkers* trilogy. *Corvallis Sch. Dist. v. Corvallis Education Assn.*, 35 Or App 531, 535, 581 P2d 972 (1978). "[A]lthough a collective bargaining contract may not expressly provide for a remedy, the arbitrator nevertheless may fashion a remedy if he interprets the contract to give him that authority." *Id.* (citing *Steelworkers v. Enterprise Corp.*, 363 US 593, 582-83, 80 S Ct 1358, 1353, 4 L Ed 2d 1424 (1960)). In doing so, an arbitrator "'is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating

remedies[, where] the need is for flexibility in meeting a wide variety of situations.'" *Id.* (quoting *Steelworkers*, 363 US at 597).

## III. CONCLUSION

ERB did not err in determining that the city committed an unfair labor practice when it refused to implement the arbitrator's award. That determination was supported by substantial reason. The board correctly determined that the arbitrator acted within his authority when he fashioned a remedy that included compensation for Hurley's lost disability benefits.

Affirmed.